No. 34,387

ALEX THOMAS and ADA THOMAS, *Appellees*, v. GUY P. MEYER, doing business as THE MEYER COMMISSION COMPANY, and GEORGE V. KEEN, *Appellants*.

(95 P. 2d 267)

Opinion filed November 10, 1939.

*John Bradley*, of Wellington, *Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellants.

*Ford Harbaugh*, of Topeka, *H. W. Goodwin* and *W. H. Schwinn*, both of Wellington, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action by parents to recover for the death of their son, who was killed in a collision between the car he was driving and the defendants' truck. Judgment was for plaintiffs. Defendants appeal.

The plaintiffs are the father and mother of Stanley Thomas. He would have been twenty-one years old on August 26, 1938. He was killed in the collision out of which this action arose on July 26, 1938. The defendant Meyer was in the commission business in Hutchinson, and in that business used a 1935 model Ford V-8 truck. This truck weighed 5,200 pounds, bed and all, and was seventeen feet long and seven and one-half feet wide. Defendant George V. Keen, Meyer's employee, was driving the truck at the time of the collision. Meyer was asleep in the hammock with which the truck

was equipped. Stanley Thomas was driving a 1935 Ford de luxe four-door sedan. The collision occurred on highway 81, a north-and-south road, between eight and nine miles north of Wellington. The highway at that point is practically level, with an eighteen-foot slab, and dirt shoulder of about ten feet in width on each side. The time of the collision was about 2:10 in the morning. The Meyer truck was going north so that it belonged on the east half of the slab. The Thomas car was going south so that it belonged on the west side of the slab. Meyer was asleep at the time of the collision. Thomas never regained consciousness. There were no impartial witnesses. The evidence as to where the collision occurred was largely circumstantial.

The petition charged the defendants with several acts of negligence. The charge with which we are mainly interested is the following:

"In driving the said truck across the center line of said highway and colliding with the said automobile of the said Stanley Thomas on the latter's own or west side of the said highway.

"In driving the said truck on the wrong side of center line of the said highway."

In the answer of defendants they denied any negligence and alleged that Thomas was guilty of negligence because he drove his car on the east side of the road.

In answer to special questions, the jury found that the point of impact of the two vehicles was about the center of the west side of the slab—this finding put the truck on the left-hand side of the road—that Thomas was not guilty of any negligence, and plaintiffs were guilty of the negligence of driving the truck on the wrong side of the highway. The jury also found that the defendant's truck left the west edge of the concrete slab forty-nine steps south of the Thomas car and continued north seventeen steps before returning to the pavement. The left tracks on the east side of the highway, about even with the Thomas car, continued in a northeast direction off the pavement and continued north for several yards or paces, thence in a northwest direction to the west side of the road.

The defendants filed motions to strike out these and answers to other questions, for judgment on the answers to special questions, and for a new trial. All these motions were overruled and judgment was entered for the amount found by the jury. Hence this appeal.

The first point argued by the defendants is that the trial court erred in the admission of evidence.

It will be noted from an examination of the special finding just set out that there must have been evidence in the record from which the jury received the idea of the route traveled by the truck just before the collision. This testimony was that of the sheriff of Sumner county. It is this testimony which defendants contend it was error on the part of the trial court to admit. This witness testified that he arrived at the scene of the collision shortly before three o'clock. He testified as follows:

"I examined the tires on the truck. The tracks that went off next to the Thomas car and the ones that went off the slab on the northeast were the same as the ones on the truck.

"A. From where the truck left the pavement on the west side—after coming back on the pavement it traveled diagonal northeast for a distance of forty steps, leaving the pavement and traveled off the pavement on the east side, the two outside wheels, for a distance of thirty-eight steps.

"Q. Then where did it go? A. It seemed to swing back on the pavement sharply and swung to the left for a distance of thirty-eight steps and turned almost completely around on its left side.

"Q. You spoke of the tracks south of the Thomas car—how far south of the Thomas car were those tracks? A. How far south of the Thomas car?

"Q. Yes. A. Forty-nine steps from where the Thomas car came to rest.

"Q. Which tracks showed where they left the pavement? A. The tracks made by the dual wheels on the truck.

"Q. Which truck? A. The one in this lawsuit.

"Mr. Siefkin: Object to that and move to strike it out as a conclusion. . .

"To the best of my knowledge, the tracks I observed south of the Thomas car checked identically with the tread of the tires on the Meyer's truck. The tracks left the pavement forty-nine steps south of the Thomas car, traveled along the west edge of the pavement for seventeen steps to the north, came back on the pavement and traveled diagonally northeast for forty steps, then traveled along the east edge of the pavement for thirty-eight steps, came back on the pavement and traveled diagonally to the northwest and completed the movement by making a turn to the right and going over on the left side."

It will be noted that the jury evidently believed this testimony because they followed it in returning the finding set out above. Of course, if the truck was off the west side of the slab forty-nine steps before it hit the Thomas car, then the jury was warranted in finding that it was on the left-hand side of the slab when the collision occurred.

The defendants argue that this testimony was incompetent because it was an opinion on the ultimate fact to be decided by the jury, and ignored the physical facts, and the witness would not or could not state the facts upon which the opinion was based.

Defendants quote from 9 Blashfield Cyclopedia of Automobile Law, page 582, as follows:

"But, if the witness saw the wrecked machine and observed the tracks leading up to it, he could easily and reliably trace the tracks backward along the road and determine, as a fact, from his personal observation, the exact point where the skidding commenced."

The paragraph following this is as follows:

"Where a witness has given special attention to tracking automobiles by the marks of their tires, the admission of his opinion as to the identity of an automobile which he tracked is not error, although the subject matter of his testimony is an ordinary one, not calling for the knowledge of an expert."

The above statement is supported by the holding in *Alaga Coach Line v. McCarroll*, 227 Ala. 686, 151 So. 834. In that case the court held, in substance, that a witness who has testified that on arriving at the scene of an automobile collision which had happened shortly before, but which he did not see, he observed tracks leading up to a wrecked truck, may properly be asked whether in his opinion the tracks observed by him on the right-hand side of the road were made by that truck.

(See, also, the annotation on the subject at 92 A. L. R. 475; also, *Rierson v. Southern Kansas Stage Lines Co.*, 146 Kan. 30, 69 P. 2d 1.)

We have concluded that the rule announced above is the one which is in point in this case.

Defendants make a vigorous argument that the witness ignored or refused to consider physical facts surrounding these tracks and the scene of the collision. These physical facts about which the witness was interrogated, and concerning which other witnesses were permitted to testify, go to the weight to be given the testimony rather than to its admissibility. The jury evidently believed the witness. These physical facts do not require us to say that the testimony of the sheriff should not have been given to the jury.

What has been said here disposes of the argument of the defendants on the admissibility of the testimony of other witnesses.

There was other evidence that might have had a great deal of weight with the jury on the question of which vehicle was on the wrong side of the road.

The sheriff testified that when he first arrived the driver of the truck told him he went off the pavement on the west side. Defendant points out apparent discrepancies in the testimony of the sheriff as to when the driver told him that. These discrepancies appear to be more apparent than real. At any rate, they only go

2

591

to the weight of the evidence rather than to its admissibility. There was other testimony of two witnesses that the truck driver stated, when asked what happened, "I don't know." There was ample evidence to support the verdict in this case.

The judgment of the trial court is affirmed.