TEXAS & NEW ORLEANS RAILROAD COMPANY V. MRS. JULIA KRASOFF ET AL.

No. A-561. Decided November 28, 1945.
Rehearing overruled January 16, 1946.
(191 S. W., 2d Series, 1.)

*Virginia Noel, Tom M. Davis* and *Baker, Botts, Andrews & Wharton,* all of Houston, for petitioner, Texas & New Orleans Railroad Company.

It was error for the Court of Civil Appeals to hold that the evidence in this case raised the issue of discovered peril. Texas & N. O. Ry. Co. v. Wagner, 262 S. W. 902; Pillow v. Texarkana & F. S. Ry. Co. 55 Texas Civ. App. 597, 119 S. W. 128; Houston & T. C. Ry. Co. v. O'Donnell, 99 Texas 636, 92 S. W. 409.

*Earl Cox,* of Houston, for respondent, Mrs. Julia Krasoff.

The Court of Civil Appeals erred in holding that question as to whether the deceased was in a position of peril at the railroad crossing confined the perilous position of deceased truck prior to the collision to a point actually at the railroad track, and did not include the crossing as a whole. Gulf C. & S. F. Ry. Co. v. Woods, 290 S. W. 729; Galveston, H. & S. A. Ry. v. Rodriguez, 288 S. W. 151; Burlington-Rock Island Ry. Co. v. Davis, 123 S. W. (2d) 1002.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Sam Krasoff was killed on the morning of March 3, 1943, when a truck in which he was riding was struck by a passenger train operated by Texas and New Orleans Railroad Company, at a public crossing in the town of Stafford, in Ft. Bend County.

This is a suit for damages for his death brought by his widow, Mrs. Julia Krasoff, individually and as next friend of their minor children, Sylvan and Kenneth Krasoff. A trial court judgment for the Krasoffs was reversed by the court of civil appeals and the cause remanded. 186 S. W. (2d) 289.

Both sides filed applications for writ of error, which were

granted, so we shall refer to the Krasoffs as "plaintiffs" and to the Texas and New Orleans Railroad Company as "defendant."

Besides allegations of negligence on the part of defendant in maintenance of the crossing and in its operation of the train that struck Krasoff, plaintiff alleged that the train operatives could have avoided the collision, under the doctrine of discovered peril.

Defendant pleaded a general denial, contributory negligence of Krasoff in several particulars, and unavoidable accident.

The jury found that defendant was negligent in not keeping an automatic warning signal at the crossing and that the train operator failed to ring the bell on the locomotive as it approached the crossing and to keep the bell ringing until the locomotive had either traversed the crossing or stopped; and that each of these acts of negligence was a proximate cause of the collision. It also found that defendant's engineer "discovered and realized" the perilous position of Krasoff at the crossing in time that, by exercise of ordinary care, with the means at hand and in safety to himself and others on the train, he could have avoided injury to Krasoff; that he was negligent, under those circumstances, in failing to avoid injury to Krasoff; and that such failure was a proximate cause of Krasoff's death.

After finding that the collision was not the result of an unavoidable accident, the jury further found that Krasoff failed to bring his truck to a stop free and clear of the track before attempting to cross it or to keep a proper lookout for trains which might be approaching the crossing from the east; and that his failure in each respect was negligence, which was a proximate cause of the collision.

Defendant timely filed a motion for judgment non obstante veredicto, insisting that "the undisputed and uncontradicted evidence in this case is that the engineer of the defendant's train * * * did not discover the perilous position of deceased and realize his peril within time, through the exercise of reasonable care in the use of the means at his command, consistent with his own safety, that of his train and the passengers thereon, to have avoided either the collision or injury or death to the deceased." As the jury had found Krasoff guilty of contributory negligence, the issue of discovered peril thus became the sole basis of liability. The trial court decided that question adversely to defendant, overruled its motion non obstante and granted plaintiffs' motion for judgment on the jury's verdict.

The court of civil appeals held that the evidence was sufficient to support plaintiffs' doctrine of discovered peril but that two of the special issues submitting it were fatally defective in form.

The sole point of error urged by the defendant is that the court of civil appeals "erred in holding that the evidence in this case raised the issue of discovered peril."

■ The doctrine of discovered peril has been clearly defined by the decisions of this court, one of the most recent being Texas and New Orleans Railroad Co. v. Grace, 144 Texas 71, 188 S. W. (2d) 378. As applicable to this case, it was accurately stated in defendant's motion non obstante veredicto, above quoted, namely, that the engineer must have discovered and realized the perilous position of Krasoff in sufficient time before the collision that the engineer, "through the exercise of reasonable care in the use of the means at his command, consistent with his own safety, that of his train and the passengers thereon," could have avoided injury or death to Krasoff.

■ Use of means at his command by a train operative is not necessarily restricted to stopping or slowing the train to avoid striking the party in peril. It may include as well the giving of an alarm by bell or whistle so that the one in peril may have an opportunity to extricate himself. This principle is based on the fact that the injured party's peril may be discovered when it is too late to save him by stopping or slowing the train but the tragedy may be averted by giving a warning. It is illustrated in Houston E. & W. T. Ry. Co. v. Sherman (Com. App.), 42 S. W. (2d) 241, wherein the deceased, after entering the defendant's right of way, stopped his truck, then started it and was struck and killed. The engineer testified that when he first noticed the deceased the latter was 264 feet from the engine and 20 or 25 feet from the track, traveling about 5 or 6 miles per hour; that he (the engineer) then made the usual efforts to slow or stop the train before sounding the whistle. The court said this testimony presented a jury issue as to whether the engineer acted with ordinary care because "We think an ordinary prudent person would have realized the futility of attempting to stop the train before reaching the crossing and would have instantly sounded the whistle to alarm deceased and cause him to stop and thus have avoided the accident." And in another case this court said, "The most complete diligence to stop an engine while under some conditions constituting all that could be expected might under others be less than the full performance of the duty to exercise the care of an ordinarily pru-

dent person. In some situations warnings and other expedients are more effectual than any effort to stop would be." Missouri K. & T. Ry. Co. of Texas v. Reynolds, 103 Texas, 31, 122 S. W., 531. Other authorities to the same effect are Trochta et al v. Missouri, K. & T. Ry. Co. of Texas (Com. App.), 218 S. W., 1038; Sanchez v. San Antonio & A. P. Ry. Co., 88 Texas, 117, 30 S. W., 431; and Houston & T. C. Ry. Co. v. Stevenson (Com. App.), 29 S. W. (2d) 995.

■ The testimony of defendant's engineer indisputably established the fact that Krasoff was in a position of peril as he slowly approached the defendant's tracks at the point of collision and that the fact of that perilous position was realized by the engineer before the collision occurred and while Krasoff was at least 30 feet from the tracks. The only issue relates to whether he then exercised ordinary care to use all means at his command, consistent with his own safety and that of the train and its passengers, to avoid the collision. In discussing that issue we shall assume that the train could not have been slowed or stopped in time to save Krasoff.

On direct examination by defendant, the engineer testified:

"Q. Now then, did you ever see this truck that you ultimately had the collision with? A. I saw him as he approached the crossing about -.

"Q. About how far would you say the front end of your engine was away from the crossing when you first saw the truck? A. About 400 feet, 400 to 500 feet, something like that.

"Q. About how far was the truck from the track at the time you first saw it? A. About 40 or 50 feet.

"Q. Now, Mr. Jenkins, what if anything, did you do, when you first saw the truck? A. I blew the whistle again, as a further warning.

"Q. Did you think the man was going to cross then? A. No, sir.

"Q. Why didn't you? A. Because he came to a momentary stop, and there was no question in my mind but what he was going to stop.

"Q. Then what happened, after he came to a momentary stop? A. He started up again and started ahead.

"Q. What, if anything, did you do? A. I immediately shut off the throttles, put on the brakes and opened the sanders.

*    *    *    *    *    *    *    *

"Q. When was the first time that you realized he was not going to stop? A. When I saw him start ahead.

"Q. And when you first realized he was not going to stop, what did you do? A. I immediately applied the brakes in emergency, shut off the throttle and opened the sanders, and started to blow the whistle again as quickly as I could."

On cross examination the engineer's testimony was:

"Q. Now, I believe you stated you didn't see this truck until you were four or five hundred feet from the crossing, is that right? A. Yes, sir.

"Q. What's your best judgment, four or five hundred feet? A. Yes, sir.

"Q. When you saw the truck, how far was he from the crossing? A. He was about 40 or 50 feet from the crossing.

"Q. On your right hand side? A. Yes, sir.
\* \* \* \* \* \* \* \*

"Q. Then you say he stopped before he got on the track? A. He momentarily stopped, yes sir.

"Q. When you say momentarily, a man either stops or doesn't stop; momentarily doesn't help me. Did he ever actually come to a stop before he got on the track? A. Well, I couldn't say that he came to a complete stop; just actually a dead stop, but he made a hesitating stop.

"Q. Then it is not your testimony he stopped. He either stopped or he didn't. Did he stop, or did he not stop? A. The only thing I could say, I believe he did.

"Q. You were looking right at him. A. he appeared to me to be stopped.

"Q. It looked to you he stopped. A. Yes.

"Q. When he stopped, how far was he from the rails? A. I imagine 30 or 40 feet.

"Q. He had only gone about 10 feet from the time you first saw him, until he stopped? A. Yes, sir.

"Q. Now, when he stopped, how far was your train from him? A. I imagine three or four hundred feet.

"Q. You covered about 100 feet, is that your judgment about it? A. Well, I don't know; I couldn't say exactly. I couldn't tell you exactly, it is just my opinion.

"Q. Now, when you first saw him, he was in motion, headed toward the track? A. Yes.

"Q. What did you do then, if anything? A. I started blowing the whistle.
\* \* \* \* \* \* \* \*

"Q.All right, you started blowing the whistle; then he stopped, and when he started up, then what did you do? A. I turned loose of the whistle and threw the train, and made an emergency application of the brakes and opened the sanders and shut off the throttle."

Then, after extended cross questioning as to what he had said on the point in a deposition, the witness gave the following testimony:

"Q. Then I asked this question, 'Then as I understand you, when you first saw him when you were four or five hundred feet away from him, you don't know whether you blew your whistle at that time or not? And you answered, 'Not until he started up, because I had every reason to believe he was going to stop.'; is that what you said? A. Yes.

"Q. So you didn't blow your whistle when you first saw him, but only blew it after he stopped and started up, is that correct? A. Yes, sir.

As to whether the truck had actually stopped the witness said, "Well, he made a faltering stop, I am not sure of that, whether he came to a dead stop or not."

We shall assume that the effect of this testimony was (1) that Krasoff did not bring his truck to a full stop after getting onto the highway and before attempting to proceed thereon over defendant's truck, but merely made a "faltering" or "hesitating" stop; and (2) that the engineer blew the whistle both before and immediately after he saw Krasoff make the faltering or hesitating stop.

With the record thus showing that defendant's agent, the engineer operating the train, did see and realize Krasoff's position of peril and did, in addition to trying to slow the train's speed, realize that he owed Krasoff the duty to warn him of his peril by sounding the whistle, it remains for us to determine whether there is any evidence to support the jury's finding that he did not use all available means to warn Krasoff, that is, that he did not sound the whistle immediately after discovering that Krasoff was in peril and before attempting the clearly ineffectual alternative of slowing the train.

A witness for plaintiffs, Miss Mary Mize, testified that when the collision occurred she was standing at the front window of a store which faced north across the street from the railway crossing. The record shows that Krasoff lived in the second

house beyond the crossing facing east on the highway on which he approached the railway tracks where he was killed; that the point at which he drove onto this highway from the driveway at his home could not have been more than 80 feet from the defendant's tracks; and that he was driving very slowly, so that he could have stopped the truck in from five to ten feet. Miss Mize testified that she saw Krasoff drive away from his home onto the highway thence to the point of the collision, where she saw the train hit the truck. She swore that the train whistled when it hit the truck but that "it didn't blow until it hit the truck." On a searching cross examination by defense counsel as to whether she was paying any attention to possible whistling before the collision, she testified:

"Q. You were not listening for the train or paying any attention were you? A. If it had blown I could have heard it.

"Q. You were not then listening for the train, were you? A. I was not listening for nothing.

"Q. Your mind was not overly attentive to whether the train was whistling or not, was it? All you can say, you just didn't hear it? A. It just didn't' blow."

Mrs. Della Rudy testified, for plaintiffs, that she was standing by Miss Mize in the store and saw Krasoff leave his home but that she then turned to arranging the vegetable stand and did not again look out the window until she heard a "big crash." She said she then heard the whistle blow and that the only time she heard it blown was when the train hit the truck.

Mrs. Frank Cash, whose home was on the same side of the street and between Krasoff's home and the defendant's tracks, testified, for plaintiffs, that she was pulling weeds in her garden next to the tracks when she heard a crash; that she heard a whistle when the train and the truck collided but that she did not hear any whistle before that.

While defendant insists that these witnesses would not be impressed by any whistling that may have been done before the collision because they were accustomed to trains passing at all hours of the day and night and because their minds were engaged with other business before the crash, those suggestions merely go to the weight to be given their testimony, and it is not our province to say that the jury was wrong in disregarding them. Therefore, under this record, we must hold that the jury's finding that the engineer on the occasion in question by the exercise of ordinary care and with the means at hand could have avoided the collision and that he failed to use such care was tantamount to a finding that he did not sound the whistle

immediately after he realized that Krasoff was in a perilous position. We must hold, further, that the court of civil appeals was correct in holding that the evidence raised the issue of discovered peril.

In Houston & T. C. Ry. Co. v. Stevenson, supra, it is said: "Had the whistle been blown immediately upon the discovery by the fireman of appellant's position, appellant might have sooner discovered the presence of the train, and might have turned his car sufficiently to have avoided the collision, or have jumped from it in time to have avoided personal injuries to himself." We think that statement is pertinent to the situation presented in the case at bar. Texas & Pacific Railway Co. v. Brown, 142 Texas, 385, 181 S. W. (2d) 68, is not applicable here because in that case it was not disputed that the whistle was blown immediately after the fireman decided that Brown might attempt to cross in front of the train.

Plaintiffs complain at the holding by the court of civil appeals that Special Issues Nos. 13 and 14 were so defective as to require a reversal.

Special Issue No. 13 inquired whether "the deceased Sam Krasoff and the truck which he was driving were in a position of peril at the railroad crossing in question immediately prior to the collision between the train and such truck." Special Issue No. 14, to be answered only in the event of an affirmative finding on No. 13, asked whether defendant's engineer "discovered and realized the perilous position, if any, of Sam Krasoff and the truck which he was driving at the crossing in question in time so that, by the exercise of ordinary care upon his part, and with the means at hand and in safety to himself and the train he was operating and the occupants thereof he could have avoided the injury to or death of Sam Krasoff."

As we understand the opinion of the court of civil appeals, that court held Special Issue No. 13 was erroneously submitted because, by the use of the words "at the railroad crossing in question immediately prior to the collision," the inquiry as to the existence of peril was confined to the last instant before the collision, whereas the correct inquiry was as to its existence at a time when the engineer could have avoided the collision. Under other situations that criticism undoubtedly would be sound but we are convinced it is not so in this case. With defendant's engineer testifying that he recognized Krasoff was in a perilous position when the latter was 30 or 40 feet from the tracks and when the engine was three or four hundred feet from the point of collision, we do not believe the jury could have thought they

were confined by the words "at the railroad crossing in question immediately prior to the collision" to the very last instant before the collision. Moreover, in view of the engineer's testimony, we think the trial court could have assumed that Krasoff was in a perilous position not only at the point of collision but for at least 30 feet away from it, and that, therefore, it was unnecessary to submit the question of existence of peril in any form.

Since it was an undisputed fact, the form of its submission could not have hurt the defendant; and it would follow, also, that the submission of Special Issue No. 14 conditioned on an affirmative answer to Special Issue No. 13 could make no difference.

Nor do we agree that the language of Special Issue No. 14 limited the jury to a consideration of the situation as it existed only an instant before the collision, to a time when clearly the engineer could have done nothing whatever to avoid the tragedy. The issue clearly asks whether the engineer realized Krasoff's perilous position at the crossing *"in time* so that, by the exercise of ordinary care upon his part, and *with the means at hand* and in safety to himself and the train he was operating and the occupants thereof he *could have avoided* the injury to or death of Sam Krasoff." (Italics ours.) We cannot bring ourselves to the conclusion that the jury could have been misled by that language.

It follows that the judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

Opinion delivered November 28, 1945.

Rehearing overruled January 16, 1946.