## BARNES v. PRICE et al.
### No. 12148.

Court of Civil Appeals of Texas.
Galveston.

Dec. 15, 1949.

Rehearing Denied Jan. 26, 1950.

F. Warren Hicks, of Houston, for appellant.

John L. Hill, Jr., of Houston, Helm & Jones of Houston, of counsel, for appellees.

GRAVES, Justice.

Over the protests of the appellant that the evidence did not raise them, the trial court submitted this cause to a jury upon special-issues, correctly embodying the essential elements of the doctrine of discovered-peril alone; upon a verdict answering them all in the appellee's favor, it, likewise against appellant's opposition, entered the judgment at bar against him, and in favor of the appellee.

Under appropriate points-of-error, the appellant earnestly renews his single con-

tention so made below, that the evidence failed to raise such issues, or to properly invoke the doctrine of discovered-peril against him at all.

No other question-of-law is pressed here, and the appeal is predicated solely upon such contention that the evidence, which was specific, direct, and comparatively short upon both sides, did not raise such issue as a fact for the jury's arbitrament.

Neither do the litigants in this court differ as to what the law is in Texas touching the well-settled doctrine of discovered-peril, as applied to such collisions between opposing bodies as this one was; indeed both sides recognize that all phases of it as applicable here, have been authoritatively pronounced upon by our appellate courts.

Wherefore, all the other reaches of the litigation may properly be by-passed, and attention limited to the one question:

Did the evidence raise the issue of discovered peril, and did the trial court err in so holding?

This court concludes, after a painstaking study of the record, that the issue was raised, and that the court below did not err in so holding.

The collision involved occurred between a horse the minor appellee was riding, and an automobile the appellant was driving, on Wayside Drive, a paved street in the City of Houston, approximately 40 feet wide, and running east and west, at a point where it is intersected by Lidstone Street, coming into it from the south.

As they mutually approached such intersection, the appellee, on his horse, was traveling north, and the appellant, driving his automobile, was going west, the impact having occurred about 5:45 P.M. in the daytime.

Some further details as to the locality were these: Lidstone, of gravel construction, and 18 or 20 feet wide, does not cross Wayside completely at this point, but does continue on north at a point about 75 feet west from the scene of the accident. There are 4 marked-off lanes of traffic on Wayside, each about 10 feet in width, and Wayside is straight for a distance of almost 500 feet east of Lidstone. There were no traffic-controls present at the intersection. The vicinity immediately surrounding the intersection was residential in nature, though Wayside Drive was heavily traveled. There were houses on the southwest and southeast corners of the intersection.

The precise way in which the accident happened is undisputed, to this effect: It occurred, as indicated, in the northwest quadrant of the intersection between the two streets, where the left rear-fender of the appellant's car, at its outermost edge, hooked the right front-leg of the appellee's horse, tripping it to the ground, causing the appellee's injuries.

So far, the versions of the two parties do not materially differ, but beyond that they are in decided conflict, to-wit:

The appellant asserts: "The undisputed evidence reveals that defendant (appellant) was in the fourth lane of traffic on his extreme right-hand side of the street next to the curb. Likewise, the undisputed evidence reveals that defendant's car passed the horse plaintiff (appellee) was riding in the third lane of traffic, and that the horse ran, trotted, or walked, into the left rear fender of defendant's car, and the rear-fender of the car came in contact with the front leg of the horse."

In other words, he assumes all the way and throughout his brief that the undisputed evidence showed that he himself was at all times in the 4th, or furthest north zone of Wayside, whereas the appellee thus invokes the record (and that from the appellant's only other witness) as showing the contrary: "The only other defense witness was J. B. Stern. He testified that he was driving west on Wayside about 75 or 100 feet behind Barnes, when the accident occurred. That he first saw the minor plaintiff 'when he was crossing the intersection of Lidstone going into Wayside'; that he was loping and going 8 or 10 miles per hour, at least, and had slowed down mighty little, if any; that the boy had his head down on the horse's shoulder and wasn't looking where he was going; that the boy didn't turn to the right or left as he came across the street, and that it didn't appear that he was try-

ing to do anything except stay on the horse; that the horse acted like a semi-wild mustang, and was not saddled; that Mr. Barnes had not arrived at the intersection when he first saw the boy, and that Barnes was driving in the second lane from the north curb and next to the double stripe on Wayside, and that the lane next to the north curb was completely open; that the boy looked like he was going to get involved in an accident; that when he saw him there, he saw an accident was liable to result, and he did the logical thing, and slowed down immediately."

It thus appears to this court that the appellant's interpretations of what occurred and of what the undisputed evidence was, as he sees it, reflects these two erroneous conclusions on his part, to-wit:

First, as his quoted language, supra, recites, the horse ran him down in the 4th lane after his car had passed the intersection;

Second, "that when he approached the intersection of Lidstone and Wayside, and was about 10 or 15 feet east of the intersection, he first saw the plaintiff on Lidstone Street 15 or 20 feet south of the intersection, at which time plaintiff was racing, or loping his horse, going possibly 15 miles per hour."

Especially so, since he otherwise had frankly testified to this effect: That after he first saw the boy only 15 or 20 feet south of the intersection coming at a high rate of speed, coming at a dead run, racing his horse, and going approximately 15 miles per hour on his horse, that he continued on in the same line of travel and at the same rate of speed, never blowing his horn, nor giving any kind of signal, and that he in fact did nothing from the time he first saw the boy until the impact occurred.

As this court reads it, the Statement-of-Facts discloses material conflicts between the parties as to both the quoted features, which only the jury could have resolved.

The appellee's position, on the other hand, as shown by the testimony in his behalf, was materially different, to this effect: That he had ridden his horse completely out into Wayside Drive and into the third lane thereof, and was so situated, when he discovered the defendant's car approaching near to the intersection; that he then decided he could not make it completely across the intersection, as he had first expected to do, and so he pulled his horse to the left, and brought it into a position where it faced westerly, and was parallel to the line dividing the two most northerly lanes of traffic on Wayside, and in close proximity to said lane; that at all times while he was out in Wayside Drive he was in plain view of the defendant; that Barnes was still 30 or 40 feet from him, when he arrived in the third lane of travel on Wayside; that he had time thereafter to turn his horse completely to the left and start in a westerly direction, which he did.

There was corroboration from other witnesses to the controlling features of the appellee's testimony, whereas, as before recited, appellant's one supporting witness differed with him in the respects above quoted.

The special-issues submitted by the court, seeking to elicit the actual facts, were admirably drawn, and, as stated, were all answered in the appellee's favor. Wherefore, it is concluded, under such findings:

(1) That the appellee was in a position of actual or potential peril, at least after getting out into the intersection, and that the appellant did so see him, in time to have avoided hitting him; Houston & T. C. R. Co. v. Finn, 101 Tex. 511, 512, 109 S.W. 918; Galveston H. & S. A. R. Co. v. Wagner, Tex.Com.App., 298 S.W. 552; Houston E. & W. T. R. Co. v. Sherman, Tex.Com.App., 42 S.W.2d 241; Short v. Nehi Bottling Co., Tex.Civ.App., 145 S.W. 2d 684; Hines v. Arrant, Tex.Civ.App., 225 S.W. 767, error refused; Texas & N. O. R. Co. v. Krasoff, 144 Tex. 436, 191 S.W.2d 1; Houston E. & W. T. R. Co. v. Kopinitsch, 114 Tex. 367, 268 S.W. 923; Texas Cent. R. Co. v. Dumas, Tex.Civ.App., 149 S.W. 543, writ refused.

(2) That whether or not the appellant realized such position in time to have avoided the collision was itself a question-of-fact that was properly sub-

mitted to and resolved by the jury; Houston E. & W. T. R. Co. v. Kopinitsch, supra; Missouri K. & T. R. Co. v. Reynolds, 103 Tex. 31, 122 S.W. 531; Texas Elec. Ry. Co. v. Wooten, Tex.Civ.App., 173 S.W. 2d 463, error refused for want of merit.

█ (3) That the jury was justified in finding that appellant's discovery and realization of the appellee's peril was in time within which, by the exercise of ordinary care in the use of all the means at his command, he could have avoided the collision; Texas & N. O. R. Co. v. Krasoff, 144 Tex. 436, 191 S.W.2d 1; Short v. Nehi Bottling Co., supra; Texas Elec. R. Co. v. Wooten, supra; Hall v. Weaver, Tex.Civ. App., 101 S.W.2d 1035.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.

On Appellant's Motion for Rehearing.

On rehearing, this court has stricken from its original opinion herein, near the bottom of page 4, paragraph (1), the expression "did or should have so seen him", which was inadvertent, as well as possibly misleading, and has inserted in place thereof, "did so see him".

Despite appellant's earnest arguments to the contrary, it is again held that the evidence did raise the issue of discovered peril for the jury, and that its answer thereto, favorable to the appellee, should not be set aside.

Indeed, it seems clear that the appellee-boy's testimony, which was in substance recited in the former opinion, especially when taken with that of the appellant's only witness other than himself, Mr. Stern, who testified that the appellant had not arrived at the intersection when he himself first saw the boy, and that appellant was driving in the second lane from the north curb, next to the double stripe thereon, instead of in the first or north lane thereof, plainly presented such issue.

If appellant was: just prior to the collision, in the position the appellee and Mr. Stern thus both testified he was, instead of the much closer to the boy and further to the north position he himself said he was, the jury was justified in finding that he did see the boy in ample time to have either turned his car into the north lane on Wayside, or have stopped before striking the boy, since the latter, according to his own testimony, had already turned west to his left, thereby easily preventing the collision.

The motion for rehearing is refused.