**BUTANE WHOLESALE COMPANY, Inc., et al., Appellants,**

v.

**Malton A. BUEHRING, Appellee.**

**No. 13453.**

Court of Civil Appeals of Texas.

San Antonio.

April 22, 1959.

Rehearing Denied May 20, 1959.

Lewright, Dyer & Redford, Corpus Christi, for appellants.

Arthur A. Domangue, Marcus E. Roberson, San Antonio, Armond G. Schwartz, Hallettsville, for appellee.

MURRAY, Chief Justice.

This is a motor vehicle collision case. It was instituted by Malton A. Buehring in the District Court of Goliad County, Texas, against Butane Wholesale Company, Inc., and Hubert Wayne Rose, seeking to recover damages resulting from a collision between a pick-up truck driven by Buehring and a tractor trailer tank truck driven by Rose and belonging to Butane Wholesale Company. The collision occurred about 2 p. m. on May 1, 1954, a short distance east of the city limits of Goliad, on the main highway between Goliad and Victoria, Texas, known as United States Highway No. 59. Buehring was driving his pick-up truck in a westerly direction toward Goliad, while Rose was driving the tank truck in an easterly direction toward Victoria. Buehring's proper side of the highway was the north side, while Rose's was the south side. The highway was eighteen feet wide and had a dividing stripe in its center. The pick-up truck was about six and one-half feet wide and the tank truck was about eight feet wide. The two drivers testified at the trial, and each contended that the other came across the center line and struck him. It is apparent that if each had stayed on his proper side of the road the collision would not have occurred, thus the all important question is, who was driving on the wrong side of the road at the time of the collision?

The case was submitted to a jury upon special issues and, in keeping with the jury's answers, judgment was rendered in favor of Buehring, and Butane Wholesale Company, Inc., Modern Butane Company, Inc. and Hubert Wayne Rose, have prosecuted this appeal. There was an intervener, but it and Modern Butane Company, Inc., an added defendant, need not be here mentioned as their presence in the case has no bearing upon the points to be decided.

Appellants present only the following two points, to wit:

"No. One. The Trial Court erred in permitting the witness, James Henry Young, to testify, over proper objection, that the Butane truck driven by Rose, which was involved in the accident, was the vehicle that laid down the skidmarks made by a dual wheel that were shown and visible in various pictures introduced in evidence as exhibits."

"No. Two. The Trial Court erred in permitting the witness, Sheriff A. C. Taylor, to testify, over proper objection, to the effect that the skid-marks shown in pictures introduced as exhibits, were made by a dual wheel truck operated by Rose and owned by Butane Wholesale Company, Inc."

The Sheriff of Goliad County, A. C. Taylor, and his deputy, James Henry Young, arrived at the scene of the collision shortly after it occurred. They found both vehicles and both drivers still present, made a thorough examination of the physical facts on the highway, and observed the damage done to the vehicles, which was confined to the left side of each vehicle. It was what might be called a side-swiping collision as distinguished from a head-on collision. The vehicles were approaching each other from opposite directions just prior to the collision. One vehicle or the other had to be on the wrong side of the highway or there would have been no collision. Both Taylor and Young noticed skid marks made by the pick-up truck. The left front tire of the pick-up was evidently blown out by the collision and for this reason the skid marks were easily identified. They led to the pick-up that had come to rest on the south side of the road. The pick-up truck had single tires, and these skid-marks were made by a single tire, and began from about eighteen inches to two feet north of the center stripe in the highway. The witnesses found debris at or near the point where these skid marks began, and were permitted to testify that the point of impact was about eighteen inches or two feet north of the center stripe of the highway, and on the wrong side of the highway for the Butane truck. About the same place, also on the north side of

the center stripe, they found skid marks made by a dual tire wheel and traced them in an easterly direction. These skid marks went closer to the center stripe of the highway, and after they reached the center stripe they were no longer visible. The Butane truck was equipped with dual tires and it had come to rest also on the south side of the highway, some four or five hundred feet beyond the point of collision.

The appellants' contention is that these dual-tire skid marks had been made by a truck going west rather than east, as there were what appellants contended to be tar marks to the west of the tar strips dividing the concrete slabs which composed the highway, and were made prior to this collision. Appellee contended that these so-called tar marks were rubber marks. Rose, the driver of the Butane truck, said that at the time of the collision he put his brakes on lightly to prevent his truck from jack-knifing, and allowed it to travel some four or five hundred feet before bringing it to a stop entirely off the pavement on the south side of the highway. Thus the appellants were taking the position that these dual-tire skid marks must have been made by some third truck before this accident occurred, and in any event were not made by their truck.

The witness Taylor was asked the following question:

"Could you tell from the physical markings on the pavement what vehicle, what truck, made those skid marks?"

to which question the appellants' attorney objected and was by the court overruled. The question was then repeated to the witness as follows:

"From your observation of those physical skid marks could you tell what vehicle made those marks?"

to which the witness answered: "Yes, sir. A dual-wheeled truck.

"Q. Dual-wheeled truck? A. Yes, sir."

This answer cannot be stretched to mean anything more than that "a" dual-wheeled truck made the skid marks, a fact that was undoubtedly true.

The Deputy Sheriff, Young, while testifying as a witness after testifying to the physical fact in substance as above set forth, was asked by appellee's attorney the following question:

"Q. Now, based upon what you saw there, what vehicle laid down those skid-marks? A. One of them was dual—"

At this point an objection was interposed by appellants' attorney, which was overruled by the court.

The question was then re-read to the witness and he answered as follows:

"The vehicle with dual tires made his skid-marks and the butane transport was the only vehicle there involved in the collision that had the dual tires.

"Q. Is this the vehicle you are referring to? (indicating photo) A. Yes." (The record does not show what the photo was.)

A fair interpretation of this testimony is that the skid marks were made by a dual-tire truck, and that the only dual-tire truck involved in the collision was the butane transport, and the photo shown the witness was a picture of the butane transport which was in the collision. We should not stretch this testimony so as to have the witness saying something he did not say, and then hold that error was thereby committed.

Attorney for appellants on cross-examination led the witness into saying something that he had not theretofore said, in effect, that the butane transport made the dual tire skid marks that he found near the collision, however, appellants cannot complain of the action of their own attorney.

We are aware of the cases holding that a witness cannot testify that a particular vehicle made certain skid marks when

the witness did not see the accident and was not able to trace such skid marks to the vehicle which he says made the skid marks. Blashfield Cyclopedia of Automobile Law & Practice, Vol. 9C, § 6320, p. 519; 23 A.L.R.2d at page 155; American Jurisprudence, Vol. 20, § 765, p. 634; Farmer v. Fairbanks, 71 Cal.App.2d 70, 162 P.2d 26; Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576.

The rule is to the contrary where the witness is able to trace the skid marks to the particular vehicle. Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248, error ref., n. r. e.; Thomas v. Meyer, 150 Kan. 587, 95 P.2d 267; Brady v. McQuown, 241 Iowa 34, 40 N.W.2d 25; Conley v. Jennings, 296 Ky. 652, 178 S.W.2d 185; Cumberland & Westernport Transit Co. v. Metz, 158 Md. 424, 149 A. 4.

 The testimony of Sheriff Taylor and Deputy Sheriff Young was not improperly admitted in evidence. These witnesses went no further than to testify to facts they learned from the investigation they made at the scene of the collision, and in no way invaded the province of the jury by stating such facts, and they did not testify on direct examination that the butane truck made the skid marks shown in the photos.

Appellee has filed a cross-point complaining that he had been required to file a remittitur of $2,000 by the trial court. The jury allowed appellee the sum of $6,000 for future medical expenses. The trial court evidently was of the opinion that appellee had asked for only $4,000 in his pleadings for future medical expenses, and therefore could not be permitted to recover more than he had asked for in his pleadings. Appellee's allegation was to the effect that his future medical expenses would amount to at least $4,000. Appellants did not except to the allegation as not pleading an exact amount, nor did they object to the evidence which was sufficient to justify the amount found by the jury. The total sum prayed for in appellee's petition was more than the total sum found by the jury. The allegation that future medical expenses would amount to not less than $4,000 was stating a minimum amount and not a maximum amount. The appellee not having plead any specific amount on this item of recovery, the jury was authorized to find such amount as the evidence would warrant. Humble Oil & Refining Co. v. State, Tex.Civ.App., 162 S.W.2d 119, 137, error refused.

Accordingly, the judgment will be amended so as to allow appellee a total recovery of $51,108.32, and after setting aside to intervener, United States Fidelity and Guaranty Company, the sum of $7,708.35 for all of its subrogation claims and rights, appellee is to receive the sum of $43,399.97. In other words, the remittitur of $2,000 required by the trial court is set aside and that sum restored to the amount of the judgment. As thus amended, the judgment is affirmed.