Bertram Warren **FISH** et al., Appellants,

v.

Francisco **OVALLE**, a. n. f. to Raul O. Ovalle, a minor, Appellee.

No. 16344.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 13, 1974.

Rehearing Denied July 25, 1974.

Mills, Shirley, McMicken & Eckel, John
Eckel, Galveston, for appellants.

Kronzer, Abraham & Watkins, W. James Kronzer, Larry J. Doherty, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment awarding damages for personal injury based on the doctrine of discovered peril. The defendant's principal complaint on appeal is that the evidence is not sufficient to support the necessary jury findings.

At the time of the accident the plaintiff was an eighteen year old high school student. The defendant, who has since married the plaintiff's brother, stopped her automobile in front of the plaintiff's house. The plaintiff walked up to her car and greeted her. She asked him what he was doing outside. He told her in a "playing manner" that he was waiting for someone to come run him down. The engine on her car was running. He repeated that he was waiting for someone to run him down and got in front of the car. When he placed his hands on top of the front of the hood of the car, the car moved forward. The plaintiff stepped back and the car moved forward again, and possibly a third time. Either on the second or third movement the car hit the plaintiff resulting in a broken leg. Because of medical complications which arose during the treatment of the leg, the plaintiff has suffered a serious permanent disability.

The jury found several acts of negligence on the part of the defendant each of which constituted a proximate cause of the occurrence in question. It found that the plaintiff was guilty of the following act: "being in front of the Fish car when a person using ordinary care would not have been there," which was a proximate cause of the occurrence in question. The jury found that before the occurrence in question the plaintiff was in a position of peril; that the defendant discovered that plaintiff was in such position of peril and realized that he probably would not extri-cate himself from such perilous position; that such discovery and realization were in time for the defendant to have avoided the occurrence in question by the exercise of ordinary care in the use of the means available to her; that after such discovery and realization the defendant failed to exercise ordinary care in the use of the means available to her to avoid the occurrence in question; and that such failure was a proximate cause of the occurrence in question.

The doctrine of discovered peril was carefully considered by the Supreme Court of Texas in Ford v. Panhandle & Santa Fe Railway Company, 151 Tex. 538, 252 S.W. 2d 561 (1952). The previous Texas cases on the subject were considered and authoritative rules were laid down. The court first stated:

"If one discovers another in a position where injury in all reasonable probability will be inflicted unless the discoverer uses ordinary care to prevent the injury, the duty to use such care arises, and that wholly without reference to the character of the discoverer's conduct before the discovery."

The court then rejected the "certain injury" philosophy which had crept into the doctrine of discovered peril. The court quoted, with apparent approval, from Galveston, H. & S. A. Ry. Co. v. Wagner, 298 S.W. 552 (Tex.Comm'n App.1927):

" 'In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowledge of the peril of the other.' "

In Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957), the Supreme Court said:

> "The fact of timely 'realization' on the part of the train operatives, like that of whether they thereafter diligently used the means at hand, may be established by circumstances, with or without aid of their own testimony. And as to the latter, the jury may believe it in part while rejecting it in another part."

The court also said:

> " . . . the jury could properly have reasoned that, the deceased being 'safely' visible for three-fourths of a mile to a person in the situation of the train operatives, and the latter—particularly the fireman—actually looking down the track, as their duty required them to do and as the fireman said they were, they must have seen and realized the peril of the deceased . . . "

In Safeway Stores, Inc. v. White 162 Tex. 473, 348 S.W.2d 162 (1961), the court said:

> " . . . To raise the discovery issue, it was only necessary to establish that Clark realized that plaintiff was pursuing and would probably continue a course that was likely to result in his being injured."

The court also said:

> "The 'could have' or 'should have' standard for measuring the proof required to raise the discovery issue has never been recognized by this Court and will not be adopted now . . . The trier of fact is not required to accept the testimony of the defendant or his agent, and discovery may be established by circumstantial evidence. Where there is no direct evidence raising the issue, however, the plaintiff must prove facts and circumstances from which it can fairly be inferred that the defendant did actually become aware of the peril."

In Lee v. Chumley Lumber Company, 465 S.W.2d 414 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref. n. r. e.), the court found evidence raising the doctrine of discovered peril under these circumstances. The defendant was driving a tractor-trailer north on Highway 59 following a pick-up truck. He did not pass the pick-up because he noticed that it was weaving across the center line. He followed close behind the pick-up for several miles watching it sway, swerve and go across the center line. He testified that he followed in relatively close proximity to the pick-up during all of this distance and that he felt that he and the pick-up driver were in danger. Finally the pick-up veered across the center line of the highway and was struck by a south-bound tractor-trailer. The pick-up crashed around and spun back into the north-bound lane where it was almost instantaneously struck by the defendant's vehicle. The court stated the element of discovered peril to be the exposed condition of the plaintiff, its actual discovery by the defendant in time to avert injury by the use of all means at his command commensurate with his own safety, and the negligent failure to use such means. The court held that the evidence raised fact issues as to all requisites of the doctrine of discovered peril since the defendant admitted that he knew that both he and the driver of the pick-up truck were in danger and there was nothing which would have prevented the defendant from stopping, dropping back or otherwise removing himself from what he recognized as a dangerous situation. The court stated:

> "Although a driver is not required to anticipate the negligent or unlawful conduct on the part of another he is not entitled to close his eyes to that which is plainly visible and which would have been observed and appreciated by a person of ordinary prudence similarly situated."

■ The defendant has presented both "no evidence" and "great weight" points;

in reviewing the "no evidence" points we must view and interpret the evidence in the record in its most favorable light to the plaintiff, disregarding all evidence and inferences therefrom favorable to the defendant. It is necessary to determine whether there is in evidence such facts and circumstances as taken together with all reasonable inferences therefrom constitute some evidence of probative force of the existence of the elements of discovered peril.

Both the plaintiff and the defendant testified that they recognized that there was an element of danger in standing in front of an automobile having an automatic drive when the motor was running. The plaintiff testified that he was playing when he told the defendant that he had been waiting for someone to run him down, and when he got in front of her car and placed his hands on the hood. The defendant's testimony was to the effect that she recognized that he was playing and that in the spirit of the game she removed her foot from the brake which allowed the car to move forward. There was testimony that the car moved forward slowly the first time, in response to which the plaintiff stepped back. She testified that she applied her brake and then released it again at which time defendant again stepped back but that on the third time she released the brake the plaintiff disappeared. She immediately stopped the car, got out and discovered that he was injured in front of the car. The plaintiff testified that when he got in front of the car he did not expect her to let the car go forward, but that the motion was slow and he backed up so she wouldn't hit him. Neither did he expect the car to move forward a second time, and he felt that it was much faster that time. He felt the car only went forward two times and that the second time he was so surprised that there was nothing he could do. That time it was coming pretty fast and he didn't have time even to jump toward the ditch. He testi-

fied that there was no pause between the movements, there was no stop; that from the first moment that she moved forward she didn't stop once, she just speeded up. The little series of moving the car and then moving it faster took only a few seconds.

A passenger in the car stated that the plaintiff got in front of the car and was more or less playing around. He was talking back and forth to the defendant and to her. The car was standing still. They had been there for quite a while. The car "jerked" forward more than once. The plaintiff was very close to the car. "It happened all so quickly, the next thing he wasn't standing there." She did not know right away what had happened. She just knew that he wasn't standing there any more. She couldn't explain exactly how it happened "because it happened so quickly."

■ From the evidence detailed the jury was warranted in believing that the plaintiff was in a position of peril when he placed himself in front of the running automobile; that the defendant applied and released the brake on three separate occasions; that the speed of the car increased after the brake was released for the second time; that after the plaintiff moved backward, instead of to the side, the defendant must have realized that in all reasonable probability the plaintiff would not remove himself from the position of peril; and that injury would be inflicted upon him unless the defendant acted to prevent the injury; that she had time to prevent the injury by merely retaining her foot on the brake pedal; and that she failed to use ordinary care when she released the pedal for the third time. While the evidence did not establish a certainty of injury, the jury could have reasonably concluded that there was "every reason to believe" that injury would probably occur, and that the defendant must have realized that the plaintiff was unlikely to extricate himself from the position of peril. Ford v. Panhandle &

Santa Fe Ry. Co., supra; Barnes v. Price, 226 S.W.2d 657 (Tex.Civ.App.—Galveston 1949, writ ref'd); Carsey v. Hawkins, 106 Tex. 247, 163 S.W. 586 (1914).

■ The defendant contends that the discovered peril doctrine cannot be applied because plaintiff and defendant each had an equal opportunity to have prevented the occurrence. The evidence as to the rapid sequence in which the movements of the car took place presents a question of fact as to whether or not the plaintiff could have removed himself from the position of danger. However, there was evidence that the defendant must have realized that the plaintiff would not remove himself, and that after such realization the defendant could have avoided the injury by the exercise of ordinary care. The "would not" issue was submitted to the jury. Whether he "could have" removed himself from the position of danger was immaterial. Perkins v. Nail, 37 S.W.2d 211 (Tex.Civ.App.—Eastland 1931, writ ref'd). There was no error in refusing to submit defendant's requested special issue A, reading:

"Do you find from a preponderance of the evidence that up to the time of the occurrence in question Raul Ovalle by the exercise of reasonable care could have extricated himself from the danger?"

The defendant contends the trial court erred in entering judgment for the plaintiff because under the undisputed evidence both appellant and appellee voluntarily engaged in a dangerous activity, which precluded the application of the doctrine of discovered peril. The defendant testified that after the plaintiff came up to the window and talked to her he got in front of the car and said, "Come on, come on and hit me." She then let her foot off the brake and the car rolled forward, and then stopped. He then said, "Come on and hit me." So she let her foot off the brake and it rolled forward and again stopped. The third time she took her foot off the brake he disappeared from sight and she then stopped the car and placed it in park.

■ There is a general rule that one may not recover damages for an injury received at the hands of another with his own consent, unless it arises from some act that in itself is a breach of the peace. 1 Tex.Jur.2d, Actions, p. 515. The defendant cites Parrott v. Garcia, 436 S.W.2d 897 (Tex.1969); Rogers v. Murrell, 467 S.W. 2d 642 (Tex.Civ.App.—Amarillo 1971, writ dism'd); Shaver v. Manziel, 347 S.W.2d 20 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.). These cases involved injuries to joint participants in drag races in direct violation of the Texas Penal Code. The Texas courts have applied a joint rule of contributory negligence in such situations. In the Parrott case the Supreme Court said:

"As stated not every violation of a criminal statute results in negligence or contributory negligence per se. But where the Legislature, at least in instances where the conduct is substandard even in the absence of legislation, has declared that particular acts shall not be done, it fixes a standard of reasonable care for the community; and the deliberate, unexcused participation in the violation of the statute constitutes negligence or contributory negligence as a matter of law."

In Corpus Jur. Sec., Vol. 86, Torts § 12, at page 930, the rule appears as follows:

"Where a person has voluntary manifested a definite assent to conduct which would be violative of his rights in the absence of consent, such conduct in view of the assent, infringes no right and constitutes no tort. In order to sustain this defense, however, there must be a true assent, and the claimed assent which is not voluntary or which is given by one incapable of assenting, is insufficient."

In Perkins v. Nail, 37 S.W.2d 211 (Tex. Civ.App.—Eastland 1931, writ ref'd), the court said:

"There must be an intention on the part of the plaintiff to contribute to his injuries and thereby make a case in order for the rule to have any application . . .

"In the instant case we have not a record which discloses, as a matter of law, that Mrs. Nail placed herself in this driveway with the intention of being injured, or at a time when she knew it was impossible for Jackson to stop the car and avoid the injury."

■■ While the appellant testified that the plaintiff placed himself in front of the car and invited her to try to hit him, the plaintiff did not admit making such a statement. His testimony, which was supported to a certain extent by that of the passenger in the car, would support a contrary inference because of the speed of the occurrence. Thus it cannot be said that the undisputed evidence establishes that the plaintiff voluntarily manifested a definite assent to conduct which would be violative of his rights in the absence of consent, nor that the plaintiff placed himself in front of the automobile with the intention of being injured. Even were this the case, however, we think the humanitarian doctrine of discovered peril would still be applicable. Since, after plaintiff invited defendant to participate in the game, the defendant discovered him in a position where injury in all reasonable probability would be inflicted on him unless the defendant exercised ordinary care to prevent the injury, the duty to use such care arose, and that wholly without reference to the character of the plaintiff's conduct before the discovery. Ford v. Panhandle & Santa Fe Ry. Company, supra.

■■ The defendant contends that the trial court erred in refusing to charge the jury that the time necessary for a normal driver to react to danger is three-fourths of a second. A number of appellate courts in this State have taken judicial notice of reaction time as three-fourths of a second even though no proof of reaction time was in the record. Thornton v. Campise, 459 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); Dent v. Falvey, 371 S.W.2d 63 (Tex.Civ.App. —Beaumont 1963, n. w. h.); Murphy v. Whitehurst, 300 S.W.2d 758 (Tex.Civ.App. —San Antonio 1957, writ ref'd n. r. e.). The trial court is not permitted to give an instruction amounting to a comment on the weight of the evidence. Such an instruction would have given undue prominence to an element of the defense. The better practice is to establish the fact by evidence or by a stipulation of fact. In any event we do not consider the matter to present reversible error. In our view of the evidence, the defendant's negligence consisted of positive action taken after realization of the perilous position of the plaintiff. It was the defendant's action, rather than inaction, which constituted the proximate cause of the occurrence in question.

After having reviewed all of the evidence in the case we cannot say that the verdict of the jury is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. In general the testimony of the parties was consistent. The conflicts in the testimony were resolved by the jury.

■ The defendant contends that the plaintiff's attorney committed reversible error in his closing argument to the jury. The plaintiff's petition alleged damages in "at least $37,000.00." In his argument to the jury the plaintiff's counsel stated:

"I told you $37,000.00 as a figure was the least. I didn't put that figure on the case; it came with it when I got the honor and opportunity to try it. . . . But the figure is always a minimum figure at least. I told you you are not going to be concerning yourselves, you shouldn't concern yourselves with whether or not any money was ever going to

be obtained. But Mr. Eckell is concerned with whether or not his client feels bad about this. I am concerned whether mine is justly compensated. And $100,000.00 is not enough. But I am telling you folks don't put up any more on the damage verdict in this case. Aggregate them any way you want to. Break them down any way you see fit, but keep a total figure under $100,000.-00."

The defendant immediately moved for a mistrial outside the hearing of the jury on the ground that the argument injected insurance into the case. The motion for mistrial was overruled. The jury found damages in the sum of $48,866.00. From the plaintiff's action in urging that the jury verdict not be in excess of $100,000.00 the jurors might have reasoned that the defendant was covered by liability insurance in that sum. The trial court had granted a motion in limine prior to the trial against communicating to the jury the fact that insurance was in the case. The argument complained of constituted error and possibly comtemptuous action on the part of plaintiff's counsel. However we cannot agree that the error was one which was calculated to cause, and probably did cause, the rendition of an improper verdict in this case. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963); Atchison, Topeka & Santa Fe Ry. Co. v. Acosta, 435 S.W.2d 539 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n. r. e.); Martinez v. Williams, 312 S.W.2d 742 (Tex.Civ.App.—Houston 1958, n. w. h.).

By his fourth amended original petition plaintiff sued for "the just and reasonable sum of at least $37,000.00." In his prayer he stated:

"We pray . . . that judgment be rendered as prayed for . . . and for such other and further relief, at law and in equity, to which we may show ourselves justly entitled, to which the jury believe we are deserving, and for which we would ever pray."

The defendant did not except to this feature of the plaintiff's petition. And the failure to allege the exact sum or a maximum sum of damages was waived by virtue of Rule 90, Texas Rules of Civil Procedure. In Humble Oil & Refining Company v. State, 162 S.W.2d 119 (Tex.Civ.App.—Austin 1942, writ ref'd), the court held that where the pleadings did not pray for any specific sum and there was no objection because the pleadings failed to fix a sum for which recovery was sought, no complaint could be urged against recovery to the full extent that the facts might warrant. Butane Wholesale Co., Inc. v. Buehring, 325 S.W.2d 173 (Tex.Civ.App.—Houston 1959, writ dism'd). The defendant's alternative prayer that the judgment of the trial court should be reformed and limited to the sum of $37,000.00 is denied.

The judgment is affirmed.