### EWING v. BAIN.    (No. 1535.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 3, 1924.    Rehearing Denied Jan. 24, 1924.)

Appeal and error ⬤➡1097(5)—Court of Civil Appeals proscribed from opinion on second appeal, contrary to opinion of Supreme Court on same record and issues.

The Court of Civil Appeals is proscribed by the reversal by the Supreme Court of a former appeal to entertain an opinion on second appeal on exactly the same record and issues, contrary to the Supreme Court's opinion.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by W. P. Bain against P. K. Ewing, executor. From a judgment for plaintiff, defendant appeals. Affirmed.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

John T. Hill, of El Paso, for appellee.

HARPER, C. J. This case was filed December 20, 1915, tried, and judgment rendered for defendant, affirmed by this court (215 S. W. 984), and reversed by Supreme Court (Bain v. Lovejoy, 234 S. W. 1096), to which we refer for details of the transactions upon which the action is predicated, additional to the following taken from appellant's brief:

On December 20, 1915, appellee sued John Lovejoy for damages for deceit. He alleged that Lovejoy and Stanton & Weeks were his attorneys in his suit against a railroad for damages for personal injuries, which was settled at El Paso in January, 1913, in which he got as his part about $12,000, and then Lovejoy undertook to advise him how to invest it. He then bought from Lovejoy $1,000 worth of stock at par value, in the Pecos Valley Oil & Gas Company, an Arizona corporation, of which Lovejoy was president and large stockholder, operating at Artesia, N. M., paying $1,000 therefor. He set forth various alleged false representations which Lovejoy made to him to induce the purchase, as to financial condition of the company, its holdings, the value and quantity of a producing well, etc., and also alleged Lovejoy guaranteed him against loss as to all money he should put into the enterprise. That about March 28, 1913, plaintiff went to said oil field to inspect the situation, at request of Lovejoy, in company with him, and Lovejoy repeated said false representations and induced him to loan the company and Lovejoy jointly $4,000, to be used in developing this oil enterprise, under an agreement then made between plaintiff and Lovejoy, in substance, that Lovejoy would execute to plaintiff the joint notes of himself and the company, bearing 8 per cent. per annum interest, due April 1, 1914, one for $4,000 to be secured by stock in the company of face value of $4,000, to be held by plaintiff as collateral, and one for $1,000, and plaintiff should hold as collateral . security therefor the $1,000 in stock previously sold by Lovejoy to him, and the first transaction should be so changed as to treat as a loan the $1,000 previously paid by plaintiff for stock. That this agreement was consummated on July 30, 1913, when said two notes were executed to plaintiff, one for $1,000, dated February 1, 1913, the other dated March 28, 1913, for $4,000, each signed Pecos Valley Oil & Gas Company, by John Lovejoy, President, and the $4,000 in stock was issued to plaintiff to be held as collateral. That Lovejoy represented to him that the notes were the joint obligation of himself and the company, which he believed and did not know to the contrary till they matured April 1, 1914, and not until then did he discover the various frauds practiced upon him by Lovejoy. That in fact the company was at all times insolvent and the stock worthless.

Lovejoy died, and his executor, Ewing, was made defendant, who answered by general denial and plea of statute of limitation of two years, and, lest the petition might be construed as a suit against Lovejoy on the notes, a plea of non est factum (was filed) under oath, that he did not execute the notes.

The case was submitted to jury upon special issues, with verdict and judgment for plaintiff. Defendant's amended motion for new trial was overruled, and he appeals.

The first proposition in the evidence does not support the verdict or judgment in—

---

(1) "his demand for damages for deceit, because it is barred by the statute of two years' limitation."

"II. The demand for damages for deceit, appearing otherwise barred by two-year statute of limitation, was not extended to or postponed until a date within two years of the filing of the suit, as claimed by plaintiff, by the statement made to him by Lovejoy in July, 1913, at time he delivered to plaintiff the two notes of the company, such statement being in substance: 'If the oil wells produce as ·we think they will, you will be a rich man If they do not you won't lose a cent, for I stand personally good for these two notes.

"III. Plaintiff cannot maintain a suit against Lovejoy on the statement made in July, 1913, in substance, 'I stand personally good for these two notes,' referring to the notes executed by the company to plaintiff, because the same is a verbal promise to answer for the debt of the company, and void under the statute of frauds.

"IV. The evidence is insufficient to show that plaintiff believed that the two notes executed to him by the company, mentioned in his petition, were the personal obligations of Lovejoy.

"V. The judgment in favor of plaintiff to the extent of four-fifths part thereof, being that part based upon the $4,000 loan to said company by him, is not supported by the law and evidence in this, the evidence shows that such loan was made to the company and not to Lovejoy, and that any cause of action which he may have had for deceit practiced upon him by Lovejoy to induce him to make the loan was barred by two years' limitation, and that any promise which Lovejoy may have made to protect plaintiff against loss in making such loan, or in accepting a note of the company for such loan, was only a verbal promise to answer for the debt of the company, and void under the statute of frauds, and there is no evidence to show that plaintiff believed that Lovejoy was liable on the company's note, or that would justify plaintiff in so believing.

"VI. That it was error to ask the jury whether it was agreed between plaintiff and Lovejoy that said company and Lovejoy would borrow $4,000 from plaintiff, and whether the previous amount of $1.000, which plaintiff paid to Lovejoy for $1,000 worth of stock, and the $4,000 which plaintiff loaned should be considered as a loan by plaintiff to said company and Lovejoy. because the evidence was insufficient to justify an affirmative finding upon such issues; the evidence showing that the company and not Lovejoy borrowed the $4,000.

"VII. It was error to submit to the jury whether it was agreed between plaintiff and Lovejoy that the $4,000 worth of stock issued or to be issued to plaintiff should be held by plaintiff as collateral security for the $4,000 he was loaning or had loaned; there being no evidence that he should hold any stock as collateral security.

"VIII. Error to submit to the jury whether Lovejoy represented to plaintiff that he was personally bound on the two notes mentioned in the petition at time he delivered them to plaintiff, because not authorized by the evidence.

"IX. A fatal variance in plaintiff's allegations and the evidence in this, as to the $4,000 item, he alleges he loaned same to Lovejoy and the company jointly, while the evidence shows the loan was to the company alone. He alleges the $4,000 worth of stock issued to him was to be held as collateral for such loan, while the evidence shows he owned the stock and did not hold it as collateral for such loan.

"X. Even if plaintiff should recover on account of the $1,000 he paid to Lovejoy for stock in January, 1913, yet in no event is he entitled to any recovery based upon the $4,000 item mentioned in his petition because of the reasons urged in our points 1 to 5 above.

"XI. Error of court in submitting to jury questions of whether Lovejoy represented to plaintiff (1) that the company was in a sound financial condition, (2) that its stock was worth par, because if such representations were made there was no evidence that either was false."

The issues submitted and the answers thereto are as follows:

"Question No. 1: On or about the 16th day of January, 1913, did plaintiff, Bain, purchase from John Lovejoy 100 shares of the capital stock of the Pecos Valley Oil & Gas Company for $1,000? Answer: Yes.

"Question No. 2: At the time of, or just prior to, said purchase, if you find same was made, was it agreed, in substance, between said Bain and Lovejoy that, in case of loss, Lovejoy would reimburse Bain? Answer: Yes.

"Question No. 3: Do you find from a preponderance of the evidence that on or about the 16th day of January, 1913, John Lovejoy promised plaintiff that he would be personally responsible for all plaintiff invested in the Pecos Valley Oil & Gas Company? Answer: Yes.

"Question No. 4: On or about the ——— day of March, 1913, was it agreed by and between plaintiff, Bain, and said Lovejoy that said company and said Lovejoy would borrow $4,000 from plaintiff, and would consider the said $1,000 received for the stock at El Paso as a loan to said Lovejoy and said company, and that Lovejoy would deliver to plaintiff stock in said company, of the par value of $4,000, as collateral security on said $4,000 loan, and that said stock of the par value of $1,000, purchased by plaintiff at El Paso, Tex., should be considered as collateral security also, and that all the money, to wit, $5,000, received by Lovejoy, should be considered a loan by plaintiff to defendant and said company? Answer: Yes.

"Question No. 5: Did Bain, relying on the promise of Lovejoy, as submitted in the issue just preceding, if such promise or agreement was ever made, part with the sum of $4,000? Answer: Yes.

"Question No. 6: Did John Lovejoy, at the time said notes were delivered to Bain, represent to Bain that he (Lovejoy) was individually bound on said notes?, Answer: Yes.

"Question No. 7: Did Bain rely on the representation so made to him, if same was made, and believe that John Lovejoy was individually bound on said notes? Answer: Yes.

"Question No. 8: Did Bain remain until the 19th day of December, 1913, in the belief that John Lovejoy was individually bound on said notes? Answer: Yes.

"Question No. 9: Would a person of ordinary prudence, under all the facts and circumstances, have believed as Bain believed, if he did believe Lovejoy was individually bound on said notes? Answer: Yes.

"Question No. 10: Did Bain, under all the

facts and circumstances in evidence, use ordinary diligence to discover the falsity of such representation, if Lovejoy did make such representation? Answer: Yes.

"Question No. 11: Do you find from a preponderance of the evidence that, prior to parting with the $4,000 in question herein, John Lovejoy made either of the following representations to plaintiff: (a) That the Pecos Valley Oil & Gas Company was in a sound financial condition; (b) that the stock of the Pecos Valley Oil & Gas Company was worth par? Answer: (a) Yes. (b) Yes.

"Question No. 12: Was such representation true or false? Answer: False.

"Question No. 13: Was such representation true or false? Answer: False.

"Question No. 14: Do you find from a preponderance of the evidence that plaintiff believed and relied thereon? Answer: Yes.

"Question No. 15: Do you find that such representation, or representations was one of the inducing causes of the said plaintiff, W. P. Bain, parting with the said sum of $4,000? Answer: Yes.

"Question No. 16: Did said Lovejoy make such representation with the intention that Bain should rely thereon? Answer: Yes.

"Question No. 17: Do you find from the evidence that said representation was made by Lovejoy with the intention that Bain rely thereon? Answer: Yes."

Upon the first trial of this case, the trial court instructed a verdict for the defendant. Upon appeal this court sustained this action of the trial court upon exactly the same record, with the same issues urged here. We have carefully compared the statements of facts filed.

The Supreme Court, in reversing the case for trial, held that there was evidence to support the above findings, so any opinion entertained by this court to the contrary is proscribed thereby; for that reason, since the jury has returned favorable answers to plaintiff to all questions, the propositions are overruled, and cause affirmed.