### CLEM v. FULGHUM.
#### No. 10737.

Court of Civil Appeals of Texas. Dallas. Feb. 11, 1931.

Rehearing Denied March 14, 1931.

Geo. T. Burgess, of Dallas, for appellant.
Crate Dalton, of Dallas, for appellee.

LOONEY, J.

W. W. Fulghum sued O. E. Clem to rescind the sale of a parcel of land in the city of Dallas, to cancel a note for $2,300, given as part of the consideration, to recover $200 paid on the trade, and to recover certain damages alleged to have arisen from special circumstances surrounding the contract.

The case has been twice tried and twice appealed; on the first trial judgment was rendered for plaintiff on an instructed verdict and was affirmed by the Amarillo Court of Civil Appeals [see Clem v. Fulgham, 4 S. W.(2d) 280], but was reversed and remanded by the Supreme Court on writ of error, as recommended by the Commission of Appeals [see Clem v. Fulgham, 14 S.W.(2d) 812]. The judgment appealed from was based on jury findings, is in favor of plaintiff for $990 damages, including the $200 cash paid, and $790 special damages; also cancels the deed from Clem to plaintiff, conveying the land, and the purchase-money note given by plaintiff for the deferred payment.

Plaintiff insists that the appeal was taken for delay without sufficient cause; hence claims 10 per cent. damages on the amount in dispute, as authorized by article 1860, R. S. 1925. The suggestion of delay opened the entire record, and requires reversal for any material error disclosed, whether assigned or not. See Guffey v. Farmers', etc., Bank (Tex. Civ. App.) 250 S. W. 301; Levine v. Cullum Boren Co. (Tex. Civ. App.) 253 S. W. 894; Rose v. Brantley (Tex. Civ. App.) 262 S. W. 193.

Plaintiff's cause of action, as alleged, is substantially that Clem, acting through his agent, C. L. Snow, claimed to own a lot fronting 50 feet on Montreal street, having a depth of 200 feet, which he offered to sell for $2,500; that, within a day or two after plaintiff accepted this offer, he was informed by Snow, defendant's agent, that there was a mistake as to the size of the lot, that, instead of the lot having a frontage of only 50 feet on Montreal, it had 70.4 feet, and instead of having a depth of 200 feet, it had 179 feet, but notwithstanding defendant was willing to sell at the originally named price; relying upon the representations as to the size and dimensions of the lot, plaintiff agreed to purchase at the same price and terms as originally made and accordingly defendant executed and delivered his certain warranty deed, describing the lot as being 70.4 by 179 feet; whereupon defendant accepted same, paid $200 cash, and executed a vendor's lien note for $2,300, payable to defendant, evidencing the deferred payment; that, before consummating the trade, Snow was informed by plaintiff that the lot was being purchased for the purpose of erecting thereon an apartment house, and, with this end in view, immediately after receiving the deed plaintiff had the lot surveyed and its corners staked, had plans and specifications for the building drawn, assembled certain building materials upon the lot, had excavations made for the foundation, and forms made for concrete work, took out insurance on the building, employed necessary labor, and gave his own time, personally supervising the work, etc. While in the midst of these preparations, plaintiff learned, for the first time, that defendant did not own a lot of the size conveyed, but in fact owned a lot only 49.4 feet wide by 168 feet in depth. Thereupon he immediately ceased work upon the building, asserted the right to rescind the contract, tendered back the deed, demanded the return of the amount of cash paid, and the note for $2,300. Plaintiff also alleged certain expenses incurred for returning material that had been assembled, for filling excavations and clearing off the lot, and that he suffered loss on account of depreciation in the price of said materials; altogether special damages, for which he sought judgment, amounted to $1,265.

It is obvious that plaintiff proceeded on the idea that Clem owned the land; that he listed the same with Snow for sale; that in all transactions in regard to the matter plaintiff dealt with Clem through Snow, as agent; therefore, upon the substantial truth of these allegations, plaintiff sought rescission and recovery of damages.

■■ The facts, in our opinion, fall far short of sustaining the case made on paper. The proof developed that the lot belonged to S. Z. Park; that he acquired same from W. N. Goad, and, being indebted to the Clem Lumber Company, caused Goad to convey the same to defendant, Clem, in form a deed absolute, but intended as security for said indebtedness due the lumber company; Park, and not Clem, listed the land with Snow for sale; Park, and not Clem, entered into the contract of sale with plaintiff, which was in writing, and described the lot to be conveyed as "being 50x200 feet on Montreal Street, being the first vacant 50 feet facing East on Montreal Street South of Tenth Street." The evidence fails to disclose that this contract was changed, as alleged by plaintiff. Plaintiff knew Park owned the lot; neither plaintiff nor Snow had any communication with Clem in regard to the trade, or in regard to the special circumstances surrounding same; during the entire time of the negotiations Clem was absent from the state and executed the deed while in the state of Colorado, on its being sent to him there.

A discussion of the situation presented is, in our opinion, unnecessary, as it is obvious the case proven is so materially variant from the case pleaded, it cannot be reasonably contended that an issue was raised as to Clem's liability for special damages.

The rule applicable to such a case was stated by the Supreme Court in Western Union v. Smith, 88 Tex. 13, 28 S. W. 931, 30 S. W. 549, 550, as follows: "The plaintiff who sues upon a contract must recover upon the contract alleged in his petition, and, if his proof shows a contract essentially different from that alleged, he must fail in the action"— citing Morris v. Kasling, 79 Tex. 145, 15 S. W. 226, 11 L. R. A. 398; Gammage v. Alexander, 14 Tex. 418; Brown v. Martin, 19 Tex. 344; Brinkley v. Harkins, 48 Tex. 225; Krohn v. Heyn, 77 Tex. 319, 14 S. W. 130. Also see Western Union v. Byrd, 34 Tex. Civ. App. 594, 79 S. W. 40–42; Weld-Neville, etc., v. Lewis (Tex. Civ. App.) 163 S. W. 667.

■ But plaintiff invokes the doctrine of "the law of the case," and insists that all material questions were settled in his favor on the former appeal. We recognize the general rule that a question of law decided on appeal will govern throughout subsequent stages of the case, including decisions that determine the sufficiency of evidence to raise or establish an issue of fact. In support of this doctrine, see County of Galveston v. Galveston Gas Co., 72 Tex. 509, 516, 10 S. W. 583; Wolf v. Sahm (Tex. Civ. App.) 135 S. W. 733; Kelley v. Fain (Tex. Civ. App.) 168 S. W. 869; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Tex. 153, 154, 8 S. W. 64; Western Union v. Erwin (Tex. Civ. App.) 164 S. W. 908; Sheffield v. Meyer (Tex. Civ. App.) 229 S. W. 614; Campbell v. Turley (Tex. Civ. App.) 229 S. W. 595; Ewing v. Bain (Tex.

Civ. App.) 257 S. W. 688; Texas Juris. vol. 3, §§ 939, 946.

But this general rule is not unyielding; there are well-recognized exceptions, as stated by the Commission of Appeals, in answer to certified questions, in Green v. Priddy, 112 Tex. 567, 250 S. W. 656, 660, as follows: "Upon subsequent appeals the court will adhere to its former rulings unless clearly erroneous, but such former rulings constitute no bar to a further consideration of the same question upon a subsequent appeal, nor to a revision of such holding, if, in fact, erroneous"—citing Kempner v. Huddleston, 90 Tex. 182, 185, 37 S. W. 1066; Roberts v. Armstrong (Tex. Com. App.) 231 S. W. 371, 373. This doctrine is applicable only where on a second or subsequent appeal the facts are substantially the same as on the first, and this must be made to appear, for the court will indulge no such presumption. 3 Texas Juris. 1342, 3, §§ 942, 943.

On the former appeal, the Court of Civil Appeals affirmed the case on the idea that Clem was guilty of constructive fraud, in that the deed executed by him described a larger parcel of land by 20 feet in width than he could legally convey. This is apparent from the following excerpts, the court said: "There is and can be no controversy over the fact that Clem executed and delivered to the plaintiff his warranty deed, in which the size of the lot was given as 70.4 feet wide by 179 feet in depth. Was this an actionable representation upon proof of its falsity? It will be remembered that the plaintiff's petition is an action for rescission and cancellation, and for such damages as were caused to him in his attempt to make use of the lot, and was not an affirmance of the contract." The court concludes the opinion as follows, viz.: "It appearing that this express warranty was made and that the lot was short 20 feet in width and 11 feet in depth from that deeded to the plaintiff, we affirm the judgment of the trial court."

To entitled plaintiff to recover on this theory, it must appear from the facts and circumstances that the inclusion in the deed executed by Clem of more land than he had the legal right to convey was, in effect, a representation that he owned the land, that it was false, and in ignorance of its falsity plaintiff relied and acted upon same, to his damage. Elements of Actionable Fraud, 26 C. J. 1062, § 6.

The undisputed facts bearing upon this phase of the case are these: Goad owned the lot described as 70.4 by 179 feet, and conveyed to a Mr. Clark a part, a strip 21 by 179 feet. This conveyance was of record, hence constructive notice when Goad sold to Park the remainder of the lot, and at his direction conveyed the same to Clem as security for an indebtedness due the lumber company. However, the conveyance erroneously described the entire tract—that is, 70.4 by 179 feet—and the deed from Clem to plaintiff contained the same erroneous description, but, after receiving the deed and realizing that a larger and materially more valuable lot had been conveyed to him than he had contracted for, plaintiff asked no one for an explanation, but in pursuit of his own designs and purposes had a surveyor stake the larger lot and was in the midst of preparations for the erection of an apartment house thereon when interrupted by Mr. Clark, who owned the 21-foot strip being used in part for the building. After discovering that he could not hold all the land described in the deed, but would be confined to a lot 50 by 179 feet, plaintiff ceased work on the building and demanded rescission of the trade.

No contention is made that any one represented to plaintiff that the lot he contracted to purchase was 70.4 by 179 feet in size, but, as the deed described such a lot, he seems to have assumed that he acquired title to the entire lot and acted accordingly, knowing, however, that the lot contracted for was only 50 feet in width, and, in our opinion, was charged with knowledge, as a matter of law, that a mistake had been made in the description, knew, or ought to have known that he was not entitled to claim or build upon the 21-foot strip, could not have been deceived by the erroneous description, and any loss he may have sustained, as the result of preparations to build upon the lot, under the facts and circumstances, was self-inflicted.

The law as to actionable fraud is stated in 26 C. J. 1134, § 55, as follows: "Since it is essential that the party to whom a misrepresentation is made should be deceived thereby and believe it to be true, one can secure no redress for a representation which he knew to be false, nor for failure to disclose facts which he knew to exist. If the representee knew the truth, it is obvious that he was neither deceived nor defrauded and that the loss he may sustain is not traceable to the representation, but is in effect self-inflicted." To the same effect see American Cotton Co. v. Heierman, 37 Tex. Civ. App. 312, 83 S. W. 845, 848; Radford v. Halper (Tex. Civ. App.) 274 S. W. 1023; Thames v. Smith (Tex. Civ. App.) 280 S. W. 859; Donoho v. Hunter (Tex. Com. App.) 287 S. W. 47, 48; Bartlett v. Terrell (Tex. Civ. App.) 292 S. W. 273; Thrower v. Brownlee (Tex. Com. App.) 12 S.W.(2d) 184, 185; Jones v. Herring (Tex. Civ. App.) 16 S.W.(2d) 325.

However, it may be assumed, for the sake of the discussion, that the inclusion in the deed, of more land than Clem had the legal right to convey was constructive fraud

that deceived plaintiff and justified rescission; yet the facts are undisputed that Clem knew nothing of the purpose for which plaintiff purchased the lot, nor was he advised of any of the special circumstances surrounding the contract; hence in no event could he be held for more than damages of a general nature, such as the law will imply as the natural and necessary results of the alleged wrong.

■ Judge Denman, in Missouri, K. & T. Ry. Co. v. Belcher, 89 Tex. 428, 35 S. W. 6, 7, announced the doctrine applicable to the situation with which we are confronted as follows: "The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions." To the same effect see Hamilton v. Schumacher (Tex. App.) 15 S. W. 715, 716; Harris v. First Nat. Bank (Tex. Civ. App.) 45 S. W. 311, 313; Kirby v. Cummings (Tex. Civ. App.) 122 S. W. 273; Terrell v. Proctor (Tex. Civ. App.) 172 S. W. 996, 1001; City of Brownsville v. Tumlinson (Tex. Civ. App.) 179 S. W. 1107, 1110; 17 C. J. 712, § 19, 746, § 77.

We have been unable to discover in the facts and circumstances of the case a theory that would justify judgment against Clem for special damages, but, as the evidence is conflicting on the issue as to the right of plaintiff to rescind, the case will be reversed and remanded for further proceedings. If on retrial facts are found that justify rescission, plaintiff will be entitled to have the purchase-money note for $2,300 canceled, and to recover the $200 paid upon the trade, with legal interest from the date of payment.

Reversed and remanded.