Henry ABALOS, Appellant,

v.

OIL DEVELOPMENT COMPANY OF TEXAS, Appellee.

No. 8529.

Court of Civil Appeals of Texas, Amarillo.

July 7, 1975.

Rehearing Denied Aug. 25, 1975.

Second Rehearing Denied Sept. 15, 1975.

Warren Burnett Associated, Richard J. Clarkson, Odessa, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins, S. Tom Morris, Amarillo, for appellee.

REYNOLDS, Justice.

The trial court instructed a verdict against plaintiff in his action for personal injury damages founded on the doctrine of discovered peril. The instructed verdict was proper because there is no evidence to show the existence and violation of any duty owed plaintiff by the defendant. Affirmed.

Defendant Oil Development Company of Texas, the operator of an oil lease in Yoakum County, employed Ruthco Company, an independent contractor, to move and reset some pumping units on the lease. The crew assigned to do the work was composed of foreman Jesse Phillips and three other employees, one of whom was plaintiff Henry Abalos, who had been employed in this type of work for nine and one-half years by Ruthco. The operation was under the entire control of Ruthco's crew and no employee of defendant had any control, direction or supervision of the work.

Pursuant to the work order for one well, the Ruthco crew removed and set aside the pumping unit and the base in the ground upon which it rested, enlarged the hole to

accommodate a larger base, and installed from another location the larger concrete base to which was attached a larger pumping unit. The dirt that had been removed from the hole was used to fill the excavated area around the base. The base was required to be level for the proper operation of the pumping unit and, in the course of the installation, the pumping unit would be run to ascertain that the base was level and not rocking, particularly where, as in this instance, the base was uneven on the bottom. If the lease operator's pumper is present, Phillips requests that he start the motor because he is more familiar with it; otherwise, Phillips starts the motor.

When the dirt backfilling was almost complete, defendant's pumper, Curtis Ray Morgan, who had the responsibility for the operation of all the pumps on the lease, arrived at the well. Without a request to do so, Morgan connected the gas line to the motor. Phillips requested that Morgan start the motor. If Morgan had refused to do so, Phillips would have started, or tried to start, the motor. If Morgan had refused because the crew would be working close to the unit, Phillips would have called his office and "leave her down."

When Phillips requested Morgan to start the motor, Abalos said, so he testified, "Do not crank that motor up, because we could get hurt real easy." Both Phillips and Morgan denied that they heard the protest voiced by Abalos. Moreover, Phillips said that Abalos raised no objection to working around the pump while it was in operation and that his crew, including Abalos, had done so many times before. Morgan cranked the motor while Abalos watched. After the Ruthco crew and Morgan had observed the motor run for four or five minutes, Phillips, seeing that the base looked all right, gave the order to complete the backfill. According to Phillips, there was nothing to prevent anyone from seeing the pump going up and down, the counterweight revolving and the moving parts of the pump. He knew no reason for a man in the process of filling the hole to get close enough to the moving parts to get caught.

Abalos, who had observed motors run to see how level the base was going to set as many as 1,000 times in his work, joined the rest of the crew in the backfilling work. He readily admitted that he knew it was a dangerous situation because the unit was running and if he got too close to it, he might get caught by it. Nevertheless, he continued to work with full knowledge of the dangerous situation, knowing that he had to be careful or he was going to get hurt.

Morgan said he stated to Phillips, "I will throw it out of gear if you will throw it back in gear. I have got to go;" and that the response was, "No, he wanted it to run where they could level the dirt." Phillips' version was that "He said he had to leave, and I told him, asked if he wanted to leave the unit pumping when we got through. He said, 'yes'. So we left it pumping; or was going to leave it pumping; still pumping while we backfilled." Abalos did not hear the conversation; "the motor was making a noise" as he was shoveling dirt next to the base.

Morgan, standing near the head of the pumping unit some twenty-five feet from the motor, began cleaning his hands. He saw Abalos, who was working on the opposite side of the unit, tamping dirt around the base with his right foot. His right hand was holding a shovel and his raised left hand "went over toward the unit." Morgan thought "that's bad business", that the arm was in a dangerous position, and that Abalos was not aware that he was sticking his arm into the moving machinery. Morgan was tempted to say something to Abalos, and his further thought was to turn off the machinery, but he took no action. When asked why he did not yell at Abalos, Morgan replied, "Well, I just didn't", adding later that he "didn't have time." When the revolving counterweight, which made about eight or ten revolutions a minute, had made one revolution and about the time Morgan "started to holler at him, it come (sic) over

again, and he throwed (sic) his hand over in there again." Morgan, in the courtroom— illustrated time lapse of three seconds, ran to the motor. When he stopped the motor, the counterweight had gone about one-half to three-fourths of a complete revolution.

Abalos remembered that he was not packing dirt around the base immediately prior to his injury, but he did not remember much about the accident itself, stating, "I don't know how I got caught." He said that when his arm was caught in the moving machinery, the counterweight made one revolution and his other arm was caught. When asked how he got close enough to get caught, he replied, "I don't remember. I don't know how I got so close."

Phillips said that, at the time of the accident, the job had not been finished. The job is finished when Phillips is satisfied that the unit is pumping right and everything is all right with it, and the crew leaves the location. If the operator's pumper tells Phillips he wants the pump shut down, the motor is stopped; otherwise, the custom is to leave it running.

After all of the evidence was presented before the jury, the trial court granted defendant's motion for instructed verdict without specifying which one or more of the nine grounds urged in the motion the court found valid. Among the grounds urged was the one that defendant owed no duty to Abalos. If the instructed verdict was proper, it is because the evidence, and any proper inferences flowing therefrom, viewed in the light most favorable to Abalos without regard to the adverse testimony, fails to factually raise the issue of a duty arising under the doctrine of discovered peril. See *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L. Rev. 361.

This is the second time this cause has been before this court. A former appeal was taken from a summary judgment granted in favor of defendant. The opinion of the majority of the court reported in 491 S.W.2d 482, with this writer dissenting at p. 484, held that the summary judgment evidence failed to demonstrate the absence of a genuine issue of material fact as to the control of the pumping unit, which had a direct bearing on whether defendant owed a duty to Abalos. The application for writ of error was "Refused, No Reversible Error."

Abalos invokes the doctrine of the law of the case. He seeks the application of the general principle that since the facts developed in both hearings are the same or nearly so, the prior appeal settled as a matter of law that a fact issue exists as to whether or not defendant owed to Abalos a duty to use ordinary care to prevent the injury when Morgan discovered Abalos in his perilous position. See *Clem v. Fulghum*, 37 S.W.2d 201 (Tex.Civ.App.—Dallas 1931), *affirmed* 58 S.W.2d 15 (Tex.Com.App.1933, jdgmt. adopted).

■ To establish tort liability, Abalos had to show the existence of a duty owed to him by defendant and a violation of that duty. *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701 (Tex.1970). Consequently, the defendant did not, strictly speaking, have the burden to establish that it owed no duty to Abalos. Greenhill, *Assumed Risk*, 20 Sw.L.J. 1, 2 (1966). Nevertheless, to prevail in the prior summary judgment proceeding, the defendant oil company had the burden to present summary judgment proof that, as a matter of law, it owed no duty to Abalos to do anything more than Morgan did. *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452, 454 (Tex.1972). The prior appeal determined that defendant failed to meet its burden of proof. However, to reach the jury in the present trial on the merits, Abalos had the burden to show the existence of a duty owed to him by defendant and a violation of that duty. *Coleman v. Hudson Gas and Oil Corporation, supra*. The fact that defendant previously failed to summarily negative the existence of a duty as a matter of

law is fundamentally different from the question of whether Abalos adduced proof of the existence of that duty as a part of his case at the present trial on the merits, and defendant's failure in the first instance does not operate to establish that Abalos successfully discharged his burden. See *Glenn v. Prestegord*, 456 S.W.2d 901 (Tex.1970). Thus, the first appeal did not establish the law of the case with respect to the question of the existence of a duty.

■■ The defendant, the occupier of the premises, had *no duty* to protect Abalos, an invitee, from or to warn him of the dangerous condition or activity of working around the pumping unit while it operated, because Abalos actually knew the open and obvious danger, *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 378 (Tex.1963), and he previously had exposed himself to this danger many times. See *Wesson v. Gillespie*, 382 S.W.2d 921 (Tex.1964). Nevertheless, the defendant had a duty to use ordinary care to prevent Abalos's injury if Morgan was in control of the pumping unit and if the elements of discovered peril enumerated in *Turner v. Texas Co.*, 138 Tex. 380, 159 S.W.2d 112 (1942), are present in this case. *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952). The burden, of course, was on Abalos to raise the issue, as a part of his case, that Morgan was in control of the pumping unit. See 2 Restatement, Torts 2d, § 314, comment d. If not, Morgan's status would be that of a bystander and, irrespective of any realization of danger by or any moral duty on the part of Morgan, the defendant would owe no legal duty to do more than Morgan did. *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109 (1942); 2 Restatement, Torts 2d, § 314.

■ The undisputed evidence is that while Morgan had the responsibility for the normal operation of the pumps on defendant's lease, at all times before, during and after Abalos received his injury, Ruthco had complete control of its operation, which included the running of the pumping unit to insure that the work was properly performed. Morgan had no responsibility for or to assist in Ruthco's work, and had he not been present when the work reached the stage where the pumping unit was required to be operated, Phillips would have started the motor. At the time Abalos suffered his injury, the work had not been finished and Ruthco had not relinquished its control over the operation. It follows that Abalos failed to present any evidence that Morgan had control of the pumping unit. Thus, Abalos failed to show that defendant owed him a duty to do more than Morgan did, and the instructed verdict was correctly granted.

The judgment of the trial court is affirmed.

ELLIS, Chief Justice (dissenting).

I respectfully dissent. It is my opinion that the evidence raised fact issues bearing upon the ultimate question as to the existence and violation of duty owed by the defendant to the plaintiff under the particular circumstances existing on the occasion of the injury. Thus, the non-existence of duty or lack of violation thereof have not been established as a matter of law, and the judgment granting the instructed verdict should be reversed and the cause remanded.

The plaintiff alleged negligence of defendant's agent, Curtis Morgan, who, upon discovery of plaintiff's position of peril, failed to take timely action to prevent his injury and that under the doctrine of discovered peril he was entitled to recover against the defendant oil company. The defendant answered by alleging that plaintiff assumed the risk of his work, knew and appreciated the danger and failed to keep a proper lookout for his own safety. Thus, the contention of the plaintiff with respect to the defendant's duty under application of the discovered peril doctrine is confronted by the affirmative defense of volenti non fit injuria raised by the defendant. The defendant takes the position that its status was that of a bystander and as a matter of law was under no duty to take affirmative

action. The plaintiff insists that in seeking to define the source and extent of defendant's duty, if any, fact issues are encountered relating to the ultimate issue as to whether the defendant had a duty to attempt to warn or rescue the plaintiff from his impending danger, and that as a matter of law, plaintiff is not barred from recovery by volenti.

On the occasion in question, the pumping unit had been set in the larger base, and when that work was substantially finished, the defendant's pumper, Curtis Morgan, arrived at the wellsite. Morgan was the defendant's agent who had the responsibility of seeing that the pumps on that particular lease operated and were in good operating order. The work remaining to be done at the time of Morgan's arrival was to complete the hookup, see that the pump was level and finish the backfill of dirt around the pump base. The field superintendent of Ruthco's crew was Jesse Phillips. Morgan hooked up the gas line *on his own initiative*, and at Phillips' request he started the pumping unit. It was customary for the lease operator to start the engine and pump because he was more familiar with the equipment. The pump ran for several minutes to see if it was "setting level" before they began their backfilling around the base. When it appeared that the pump base was level, Phillips directed the Ruthco crew to complete the backfilling of dirt around the pump base. During the backfilling work Abalos got his arms caught in the pumping unit between the Pitman arm and the crank. According to Phillips, it was obvious that at the time Abalos was caught the pumping unit had not made one complete revolution by the time it was stopped, but it had completed a half turn. Just before Abalos was injured, the defendant's pumper, Morgan, told Phillips, the foreman of Ruthco's crew, that "I will throw it out of gear if you will throw it back in gear. I have got to go." According to Morgan, Phillips said, "No, he wanted it to run where they could level the dirt." Morgan then started to clean his hands. He looked up and observed that Abalos was dangerously close to the moving pump. He realized that Abalos was in danger of getting hurt, and he stated that he did not think that Abalos was aware that he was sticking his arm into the moving machinery. Morgan considered saying something to Abalos, but he never did speak to him. When asked why he didn't yell at Abalos if he thought he was in a dangerous position, he stated, "Well, I·just didn't." In the next revolution of the pump Abalos' hand was caught. Morgan then immediately ran from the wellhead to the pump controls and stopped the pump before it completed another revolution. The evidence shows that the distance from the point near the wellhead where Morgan was standing was about 25 feet from the controls, that the pump was making 8 to 10 revolutions per minute (which would be 6 or 7 seconds per revolution), and when Abalos' arm was caught, Morgan was able to run the 25 feet and shut off the pump in less then 6 seconds.

Abalos, who at the time of his injury was engaged in backfilling dirt around the base of the pump, stated that he told Phillips and Morgan that they should not start the engine because he might get hurt, but they didn't listen to him. He further stated that it was a dangerous situation because the engine was running.

Morgan and Phillips each testified that Abalos did not say anything concerning whether the motor should be started. Morgan said he "didn't say a word to me." Phillips' testimony concerning this matter was to the effect that Abalos said nothing about whether the motor should be started, that he raised no objection about working around the pump while it was in operation, and that his crew, including Abalos, had done this type of work around a pump while it was in operation many times before.

In the case of *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972) the Texas Supreme Court pointed out that in the conventional occupier—invitee case, it is the

plaintiff's burden to prove the existence and violation of a legal duty owed by the defendant which includes his burden to prove that he did not possess actual knowledge of the danger, and that he did not fully appreciate the nature and extent of the danger. The court also noted that the defendant's affirmative volenti defense created a burden on the defendant to prove the plaintiff's knowledge and appreciation of the danger to which he was exposed. However, under the circumstances of this case, the additional basic question has arisen as to whether, under the evidence, the doctrine of discovered peril is applicable.

The essential elements of discovered peril as set out in *Turner v. Texas Co.*, 138 Tex. 380, 159 S.W.2d 112 (1942) quoting from *Baker v. Shafter*, Tex.Comm.App., 231 S.W. 349, 350, are: "(1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendants' agents of his perilous situation in time to have averted—by the use of all means at his command, commensurate with his own safety—injury to him; and (3) the failure thereafter to use such means." In order to have these elements of discovered peril submitted to the jury, the plaintiff is required to sufficiently prove all of such facts and circumstances as taken together with all reasonable inferences therefrom to constitute some evidence of probative force of their existence. *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952). However, fact issues concerning primary and contributory negligence are immaterial in passing upon the question as to whether a duty has arisen to prevent injury to the plaintiff under the doctrine of discovered peril. See *Parks v. Airline Motor Coaches, Inc.*, 145 Tex. 44, 193 S.W.2d 967 (1946). In *Ford v. Panhandle & Santa Fe Ry. Co.*, supra, the court significantly stated:

> "If one discovers another in a position where injury in all reasonable probability will be inflicted unless the discoverer uses ordinary care to prevent the injury, the duty to use such care arises, and that

*wholly without reference to the character of the discoverer's conduct before the discovery."* (emphasis added)

In determining the vital questions presented, there are significant aspects of this case which should be kept in proper perspective. First, it is basic that we are here considering the propriety of an instructed verdict and to recognize that the "no evidence" rule applies, and any inference which properly may be drawn from the evidence must be indulged against the granting of the motion. *McRoy v. Riverlake Country Club, Inc.*, 426 S.W.2d 299 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). We are not concerned whether the evidence was sufficient to sustain a jury verdict had the case been submitted to a jury, but whether there were any fact issues raised which bear upon or are related to the ultimate question of duty on the part of the defendant under the evidence and circumstances of this case. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, " 'No Evidence' or 'Insufficient Evidence' Points of Error," 38 Tex.L.Rev. 361. If so, until such issues are resolved it cannot be said as a matter of law that there was no duty and thus the instructed verdict was inappropriate.

Another significant aspect of this case is that this is the second appeal of the case, and it is contended by appellant that all material aspects were settled in his favor in the first appeal in the summary judgment proceeding, *Abalos v. Oil Development Company of Texas*, 491 S.W.2d 482 (Tex. Civ.App.—Amarillo 1973, writ ref'd n. r. e.). Thus, appellant invokes the doctrine of the "law of the case." In the case of *Clem v. Fulghum*, 37 S.W.2d 201 (Tex.Civ.App.— Dallas 1931, affirmed at 58 S.W.2d 15) it was stated:

> "We recognize the general rule that a question of law decided on appeal will govern throughout subsequent stages of the case, including decisions that determine the sufficiency of evidence to raise or establish an issue of fact." (cases cited)

In 4 Tex.Jur.2d Rev. Part 2, Appeal and Error—Civil Cases, § 1002, we find the following:

"The doctrine of the law of the case is applicable only if it appears, on the second trial of the cause or on the appeal from the judgment rendered at the second trial, either that the facts involved are substantially the same as those involved on the first trial, or else that such facts are so nearly the same as those of the first trial that any difference between them will not result in materially affecting the legal questions involved."

The former appeal of this case involved a summary judgment proceeding wherein the burden was upon the defendant, as movant, to clearly demonstrate that no genuine issue of material fact existed and that the movant had established as a matter of law that no duty existed on the part of defendant Oil Development Company on the occasion in question. Substantially the same evidence was submitted by deposition as summary judgment proof as that relied upon by both parties in this trial of the case on its merits. This court held in the former appeal that a fact question was raised as to matter of actual control of the operation of the pumping unit at the time of the plaintiff's injury. In such appeal, this court stated:

"Although the question of duty is one of law, in this case the movant has not established as a matter of law that no duty existed. The fact issue exists as to the essential element of actual control of the operation of the pumping unit, this issue having a direct bearing upon the ultimate issue of duty."

Also, this court held on the former appeal that a fact issue was raised as to whether or not appellee's employee, in the light of these particular circumstances, had sufficient time to take action to prevent the injury to Abalos when he discovered him in the dangerous position. By reason of the existence of the fact issues above mentioned, the summary judgment entered by the trial court was reversed and the cause was remanded for trial on its merits. Application for writ of error was brought by the defendant to the Texas Supreme Court, and the application for writ was refused, "No Reversible Error."

In this trial of the cause on its merits, the trial court granted the defendant's Motion for Directed Verdict, and in this appeal, among other contentions, the appellant invokes the doctrine of "law of the case." Appellee insists that the former appeal was from a summary judgment, and that an instructed verdict may be proper in this proceeding although a summary judgment was not proper in the previous proceeding. *Prestegord v. Glenn*, 441 S.W.2d 185 (Tex. 1969); *Glenn v. Prestegord*, 456 S.W.2d 901 (Tex.1970). In the first *Prestegord* appeal, a medical malpractice suit, summary judgment for the defendant was reversed by the Supreme Court while in the second appeal, instructed verdict in favor of the defendant was affirmed by the Supreme Court. The difference in the two holdings was based upon placement of the burden of proof. In the first proceeding, a summary judgment proceeding, the defendant had the burden of proof, and the court found that there was a fact issue on the question of the defendant's negligence and that the summary judgment should not have been entered. In the trial of *Prestegord* on its merits, the plaintiff had the burden of establishing *both negligence and proximate cause*, and in the absence of any proof in either hearing as to proximate cause, the plaintiff had not borne its burden, instructed verdict was proper and thus the judgment of the trial court was affirmed.

It is recognized that in this trial of the instant case on its merits the burden is upon the plaintiff to prove the existence and violation of a legal duty owed to him by the defendant and that he did not have actual knowledge and appreciation of the risk to which he was exposed. After the plaintiff had rested its case and prior to the filing of its Motion for Directed Verdict, the defendant presented its evidence in sup-

port of its affirmative defense of volenti and sought to establish the plaintiff's knowledge and appreciation of the danger to support its contention of "no duty" in this occupier-invitee setting. Because of the substantial identity and overlapping of required proof with respect to the issues raised in the trial on its merits and those raised in the summary judgment proceeding, i. e., whether the defendant had a duty being dependent upon proof of plaintiff's actual realization and appreciation of the danger, *Adam Dante v. Sharpe*, supra, the burden of proof on summary judgment and the motion for instructed verdict was substantially the same. This situation is therefore distinguishable from the difference in the burden of proof requirements in (1) the summary judgment proceeding and (2) the trial on its merits which were involved in the two *Prestegord* appeals. Because of the overlapping and substantial identity of the fact issues raised from the evidence presented in the two appeals of this case, the essential holdings in the previous appeal of the summary judgment aspect of this case, i. e., that "no duty" was not established as a matter of law since certain fact issues were raised upon which reasonable minds could differ which were related to the ultimate question of duty, would also be applicable with respect to the question of the granting of the Motion for Directed Verdict in the instant case. It has not been established that the fact issues recognized by this court in the summary judgment proceeding have been eliminated by the evidence in this trial on the merits, particularly when the recognized "no evidence" standards are applied.

However, irrespective of the applicability of the holding in the summary judgment proceeding involved in the previous appeal, and by considering this appeal independently, the evidence raises fact issues as to the actual control of the operation of the pump at the time of the occurrence in question; and the determination of the issue of actual control will bear directly on the ultimate and vital issue of the defendant's duty.

Further, if it is established from the various facts and circumstances bearing on duty that a duty on defendant's part did arise, then the additional fact issue is raised as to whether the appellee's employee, in the light of these particular circumstances, had sufficient time to take action to prevent the injury to Abalos when he discovered him in the dangerous position. Also, there is some doubt, and it does not appear to have been established as a matter of law, that Abalos sufficiently appreciated the dangerous position at the time he assumed the risk of working while the pump was operating. Since he was experienced in this type of work and had performed similar duties many times, it is indicated that on this occasion he apparently did not actually realize and appreciate the danger of this particular undertaking. Although Abalos stated that he requested that the motor not be started, he did not make any apparent effort to stay out of the way of the pump, thereby indicating that he may not have fully appreciated and realized the actual danger. Morgan and Phillips both testified that they did not know that Abalos requested that the engine not be started, and Morgan expressed doubt as to whether Abalos realized and appreciated his perilous condition. In view of this, the matter of Abalos' knowledge and appreciation of the danger raises a fact issue. Further, a determination of these fact issues are related to the ultimate issue of duty on defendant's part and the applicability of the doctrine of discovered peril. Because of these fact issues, "no duty" has not been established as a matter of law, and the instructed verdict would not be justified.

The appellee contends that the applicable rule is the rule adopted by the Restatement, Second, Torts § 314, which provides:

"Duty to Act for Protection of Others

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

Comment *c* under that Section states:

"The rule stated in this Section is applicable irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense in giving him aid or protection."

Also, it is significant that the term "actor," as set out in Restatement, Second, Torts § 3, comment a, used to describe the person whose conduct is in question as a basis for liability, includes one whose conduct consists of failure to act as well as one who does act.

In this connection, appellant refers to comment d of the above cited § 314 of Restatement, Second, Torts, which states in part:

"d. The rule stated in this Section applies only where the peril in which the actor knows that the other is placed is not due to any active force which is under the actor's control. If a force is within the actor's control, his failure to control it is treated as though he were actively directing it and not as a breach of duty to take affirmative steps to prevent its continuance (see § 302, Comments a and c)."

Under comment d, it is apparent that Section 314 does not apply if it is factually determined that the party who discovers the plaintiff's peril is the person who is in charge of the instrumentality that is about to injure the plaintiff. At least a fact issue was raised as to the matter of control of this particular instrumentality at the time of the injury.

Appellant contends that the facts in this case fall within the purview of the authority of Restatement, Second, Torts § 321:

"§ 321. Duty to Act When Prior Conduct is Found to be Dangerous

"(1) If the actor does an act, and subsequently realized or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

"(2) The rule stated in Subsection (1) applies even though at *the time of the act* the actor has no reason to believe it will involve such a risk." (emphasis added)

It was Morgan who was the actor and discovered, subsequently to starting the engine, that the moving parts of the pump were about to cause injury to the appellant. Under "(2)" of the above rule, it is immaterial whether Morgan realized at the time he started the pump that such action on his part would later result in injury to Abalos.

It is established that appellee's agent, Morgan, discovered the appellant's peril and there was a sufficient lapse of time after such discovery to raise a jury issue on the question as to whether Morgan was negligent, under the circumstances, in failing to take some prompt action to prevent Abalos' injury. The facts in this case which have been previously discussed show that a jury issue exists as to the aspects of the case which related to the ultimate issue of defendant's duty to aid the appellant, or whether, under these circumstances, he was a mere bystander and under no duty to act. Appellee contends that Morgan was a bystander and under no duty to act because he did nothing to create the danger, while appellant contends that the duty arose when he realized the danger, although it was previously unanticipated that such danger would arise. In determining Morgan's legal duty, if any, a jury question has been raised as to which of the parties had actual control of the pumping unit at the precise time in question, and whether, under these particular circumstances, a duty had arisen which required Morgan not to be regarded as a bystander but as one who was legally obligated to seek to rescue the appellant from the impending danger. Restatement, Second, Torts § 314, supra. Additionally, it is well established that the questions of Abalos' contributory negligence or primary negligence of the Ruthco crew are not determinative in this appeal. *Montgomery v. Houston Electric Co.*, 135 Tex. 538, 144 S.W.2d 251 (Tex.Com.App. Sec. B 1940, opinion adopted by Supreme Court); *Parks*

*v. Airline Motor Coaches, Inc.,* supra. The record shows that it was Morgan, an agent of the appellee, who by his connecting the gas line to the engine and starting the engine began a sequence of events that culminated in Abalos' injury. Significantly, it was Morgan who finally stopped the motor after the accident.

The appellee insists that the doctrine of discovered peril is not applicable to relieve a plaintiff from the bar of volenti. The recent case of *Fish v. Ovalle,* 512 S.W.2d 718 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.) involved a situation in which both plaintiff and defendant voluntarily engaged in a dangerous activity, wherein the plaintiff allegedly "requested" the defendant driver of an automobile to hit him with the vehicle while he was standing in front of it, and it was contended that such conduct on plaintiff's part would preclude the application of the doctrine of discovered peril. The court pointed out that even if the plaintiff had voluntarily placed himself in front of the automobile, the humanitarian doctrine of discovered peril would still be applicable. Further, the court stated:

> "Since, after plaintiff invited defendant to participate in the game, the defendant discovered him in a position where injury in all reasonable probability would be inflicted on him unless the defendant exercised ordinary care to prevent the injury, the duty to use such care arose, and that wholly without reference to the character of the plaintiff's conduct before the discovery. *Ford v. Panhandle & Santa Fe Ry. Company,* supra."

It appears reasonable that this holding to the effect that the duty arose after the plaintiff discovered the peril, regardless of the defendant's voluntariness in assuming the apparent risk, and that under such circumstances, the doctrine of discovered peril is applicable, is relevant to a determination of the basic questions in this case.

The record in this case establishes the existence of fact issues bearing on the ulti-mate question of defendant's duty toward the plaintiff and the doctrine of discovered peril. Also, it does not appear that it has been established as a matter of law that at the precise time the defendant's agent became aware of plaintiff's perilous position, under the circumstances of this case, he had the status of a mere bystander with no duty toward the plaintiff on the occasion in question; therefore, the directed verdict granted cannot be supported.

For the reasons above stated, the judgment of the trial court should be reversed and the cause remanded.

## ON MOTIONS FOR REHEARING

REYNOLDS, Justice.

Abalos contends that a conclusion different from the one reached by the majority is dictated by the recent case of *Farley v. M. M. Cattle Company,* 18 Tex. Sup.Ct.J. 398 (July 9, 1975), which abolished the defense of assumed risk. The brief answer is that this case was tried before the *Farley* announcement that ". . . henceforth in the trial of all actions based on negligence, *volenti non fit injuria*—he who consents cannot receive an injury—or, as generally known, voluntary assumption of risk, will no longer be treated as an issue . . . ." But the more definitive response is that the abolition of the defense does not change Abalos's initial burden, which we have held he failed to discharge, to show the existence and violation of a duty owed him by defendant before he can establish defendant's tort liability under the doctrine of discovered peril.

The motion and amended motion for rehearing are overruled.

ELLIS, Chief Justice.

I respectfully dissent to the overruling of the appellant's amended motion for rehearing on the grounds that, as indicated in my original dissenting opinion dated July 7, 1975, the record establishes the existence of fact issues bearing upon the ultimate ques-

tion of defendant's duty toward the plaintiff and also concerning the applicability of the doctrine of discovered peril under the particular circumstances of this case. It is, therefore, my opinion that the matters relevant to the existence or arising of a duty or breach thereof have not been resolved as a matter of law.